THE SHERMAN-COLONIAL REALTY CORPORATION ET AL.
*v.* DONALD E. GOLDSMITH ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued April 5—decided May 31, 1967

*Jules Lang,* with whom, on the brief, was *Max R. Lepofsky,* for the appellants (plaintiffs).

*Richard G. Bell,* with whom were *Louis M. Winer* and, on the brief, *Carroll W. Brewster,* for the appellees (defendants).

House, J. The factual situation presented on this appeal is more complex than usual in that it involves not only the judgment from which the appeal has been taken but the litigation in an independent but related action in which the Ridgefield planning commission, consisting of all the defendants in the present case, was the plaintiff. To lessen some inevitable confusion, the defendants in the present appeal will be referred to in this opinion, in all instances, as the commission.

The finding, which is not subject to correction in any material respect, discloses that the plaintiffs are the owner and contract-purchaser of real estate in Ridgefield. In 1957, the named plaintiff, the owner, filed two maps in the office of the Ridgefield town clerk showing a proposed subdivision of approximately 141 acres of land into 100 building lots. At that time there were no subdivision regulations in Ridgefield, and such a filing was the accepted manner of subdividing real estate. Effective March 1, 1959, the commission adopted its first subdivision regulations, and article 17, § 17, of those

regulations provided that "they shall not apply to any subdivision filed on a map in the Office of the Town Clerk prior to March 1, 1959." Effective July 13, 1963, the commission adopted new regulations which contained no provision corresponding to article 17, § 17, of the 1959 regulations. The 1963 regulations did, however, contain a section, § 11-1, entitled "Variations from Regulations", which authorized the planning commission to permit variances in cases where a strict application of the regulations would cause extraordinary hardship and provided that "[i]n determining the extent to which variations may be granted with respect to a subdivision shown on a map filed in the office of the Town Clerk prior to March 1, 1959, the Commission shall be guided by the amount and nature of work done thereon prior to July 13, 1963, and by whether and to what extent full compliance with the regulations would deprive the owner or developer of the benefit of funds prudently invested in development of the subdivision prior to said date." The named plaintiff paid out $6500 for engineering work pertaining to the subdivisions, and the plaintiff J-P Homes, Inc., the purchaser, hereinafter called the purchaser, paid out approximately $3500 for engineering work and other expenses connected with the obtaining of three building permits. The finding does not disclose the dates on which these expenditures were made and whether it was before or after enactment of the July 13, 1963, regulations, although it is a reasonable inference from the finding that at least the $3500 was expended subsequent to that date. At no time after the adoption of the 1963 regulations did either plaintiff make application to the commission for approval of the subdivisions as provided for in § 11-1.

In April, 1964, the purchaser obtained from the building inspector three building permits to construct houses on three of the lots. The plaintiffs believed the subdivisions to be validly established. Contrary to the advice of the Ridgefield town counsel, as well as of a prior town counsel, both of whom advised the commission that the subdivisions were valid and legally constituted subdivisions, the members of the commission, acting individually and as the commission, by other counsel, instituted suit against the plaintiffs and the building inspector by writ dated June 10, 1964, returnable to the Court of Common Pleas on the first Tuesday of July, 1964. The writ was subsequently amended to remove the members of the commission as parties in their individual capacities and leave the commission as the sole complainant in that suit. By way of relief, that suit sought an injunction against the plaintiffs to restrain them from selling lots in the subdivisions and a declaratory judgment determining the validity of the three permits issued by the building inspector.

The plaintiffs' reaction to that suit was the institution of the action giving rise to the present appeal, that is, a suit in the Superior Court against the commission and its individual members, alleging, inter alia, that the commission's suit was "malicious, illegal and oppressive and was brought with a wanton and reckless disregard of the rights of the plaintiffs." The plaintiffs sought an injunction to restrain the commission and its members from proceeding with their action in the Court of Common Pleas, from interfering with the issuance of building permits to build dwellings in the subdivisions, and to prohibit them and their successors from attacking the validity of the plaintiffs'

subdivisions. The plaintiffs also claimed $300,000 damages.

The suit pending in the Court of Common Pleas was transferred to the Superior Court, and the actions were consolidated and tried simultaneously. The court concluded that the plaintiffs' subdivisions were subject to the July 13, 1963, subdivision regulations, that the plaintiffs had demonstrated no use of a lot or lots owned by them in the subdivisions which established a vested right to continue a use nonconforming to the subdivision regulations,[1] that the plaintiffs should have made application for a variance under the provisions of § 11-1 of the 1963 regulations, and that they were not entitled to any damages. The court further concluded that the action of the commission and its members was not malicious but that the action brought by the commission in the Court of Common Pleas was brought without legal authority and, as allegedly aggrieved individuals, the members of the commission should, instead, have pursued a remedy by appeal to the board of appeals pursuant to §§ 8-6 and 8-7 of the General Statutes. Judgment was rendered for the commission and its members in the suit against them and for the subdivision owner and developer and the building inspector in the action brought against them by the commission. No appeal was taken from the latter judgment, and we are here concerned only with the appeal taken by the plaintiffs from the judgment for the commis-

---

[1] The record indicates that "certain" or "various" lots in the original development were, prior to 1963, conveyed to persons not parties to these actions. The court properly limited its decision to property owned by the plaintiffs and noted that, as to any lots previously conveyed to persons not parties, there may have been established a vested right to continue a use which may be nonconforming to the later subdivision regulations.

sion and its members in the action against them for injunctive relief and damages.

Both parties filed assignments of error from which it appears that the basic issues on this appeal are two: (1) Did the trial court err in going into the merits of the plaintiffs' claims in their action to enjoin the commission from prosecuting its action brought in the Court of Common Pleas after the court decided that the commission had no authority as a body to sue to enforce or to seek a judicial determination of issues affecting the subdivision regulations? (2) Did the trial court err in holding that the plaintiffs' subdivisions, which subdivisions predate the adoption of subdivision regulations by the town of Ridgefield, were subject to the jurisdiction of the commission and the 1963 regulations when the original 1959 regulations had expressly exempted from their purview subdivisions which predated the adoption of subdivision regulations in Ridgefield?

Since no appeal was taken from the judgment in the action instituted by the commission, the judgment rendered in that action is relevant here only because, in the case on appeal, the plaintiffs sought not only substantial damages but an injunction to restrain the commission and its members, as individuals, and their successors in office from proceeding with that suit or any other based on the same claim or theory, from interfering in any manner with the issuance of building permits in the subdivisions, and from, in any way or manner, attacking the validity of the subdivisions. Furthermore, the plaintiffs expressly alleged that the commission's suit was malicious, brought with a wanton and reckless disregard of the plaintiffs' rights, and instituted without just or probable cause. The

plaintiffs also expressly pleaded the validity of their subdivisions "in that the subdivisions attacked pre-date the adoption of Planning and Subdivision Regulations by the Town of Ridgefield" and in that the earlier subdivision regulations expressly excluded from their purview subdivisions made prior to March 1, 1959. Accordingly, the plaintiffs placed squarely in issue in the present case the questions of the applicability of the 1963 regulations to their subdivisions, whether the attack on the validity of those subdivisions was undertaken without just or probable cause or recklessly and maliciously, and whether the commission, its members and their successors in office should be enjoined from in any way attacking the validity of the subdivisions. On this appeal it is unnecessary for us to determine whether the trial court correctly concluded that under the holding of such cases as *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 193 A.2d 483, the commission's case was brought without legal authority and that the members of the commission should have pursued a different procedural course. Quite aside from these conclusions, the court committed no error in the decision reached on the merits of the controlling issues raised by the pleadings in the present case. Among these issues were the effect of the 1963 regulations on the plaintiffs' subdivisions, the good faith of the commission, whether it was justified in questioning the legality of the building permits issued for lots in the subdivision and whether the commission members, as individuals, and their successors in office should be enjoined from in any manner attacking the validity of the subdivision.

Our decisions in *Lebanon* v. *Woods,* 153 Conn. 182, 194, 196, 197, 215 A.2d 112, and *Corsino* v.

*Grover,* 148 Conn. 299, 314, 170 A.2d 267, are dispositive of the central issue raised by the plaintiffs. The mere filing of maps for the subdivision of a parcel of real estate does not necessarily immunize the subject property from the operative effect of subsequent subdivision regulations. Otherwise, "a property owner, by the process of map filing, could completely foreclose a zoning authority from ever taking any action with respect to the land included in the map, regardless of how urgent the need for regulation might be." *Corsino* v. *Grover,* supra. The court found that the plaintiffs "demonstrated no use of a lot or lots owned by them in the subdivisions which established a vested right to continue a use non-conforming to the subdivision regulations effective July 13, 1963." Although the plaintiffs assigned this conclusion as error, the claim has not been pursued in their brief, and it is therefore considered as abandoned. *Short Beach Cottage Owners Improvement Assn.* v. *Stratford,* 154 Conn. 194, 201, 224 A.2d 532. There is nothing in the record to indicate that the plaintiffs actually used the property or expended any money in physically changing the nature of the undeveloped land or that they cannot recoup in a conforming use of the land the engineering expenses they have incurred. "To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be 'irrevocably committed' to that use. *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 443-445, 86 A.2d 74; *Wallingford* v. *Roberts,* 145 Conn. 682, 684, 146 A.2d 588." *Lebanon* v. *Woods,* supra, 197. Since the plaintiffs' land was not "irrevocably committed"

to development in lots of a size smaller than that permitted by the 1963 regulations, there was no nonconfirming use as to lots of that size when the subdivision regulations were adopted, and the court properly so concluded.

We find no merit in the contention of the plaintiffs that the original exemption, included as article 17, § 17, of the 1959 regulations, constituted an approval of all subdivisions for which maps were already on file. That exemption by its terms applied only to the applicability of the 1959 regulations, and it was clearly repealed by the 1963 regulations which covered the whole subject. *McAdams* v. *Barbieri,* 143 Conn. 405, 413, 123 A.2d 182; *Hutchison* v. *Hartford,* 129 Conn. 329, 332, 27 A.2d 803. Section 1-2 of the 1963 regulations provides that "[n]o subdivision of land shall be made until a plan of such subdivision has been approved by the Commission." Section 11-1 authorizes the granting of variances with respect to a subdivision shown on a map filed in the office of the town clerk prior to March 1, 1959, and that, in considering an application for a variance under such circumstances, "the Commission shall be guided by the amount and nature of work done thereon prior to July 13, 1963, and by whether and to what extent full compliance with the regulations would deprive the owner or developer of the benefit of funds prudently invested in development of the subdivision prior to said date." There is no question in this case as to the proper exercise of the commission's authority since the plaintiffs have not submitted their plans to the commission for review, and, accordingly, the plans have not been approved by the commission. The court properly concluded that § 11-1 of the 1963 subdivision regulations, effective July 13, 1963, pro-

vides the course which the plaintiffs should have adopted. Nor are the plaintiffs entitled to a three-year stay in the operative effect of the 1963 regulations under the provisions of § 8-26a of the General Statutes since that statute applies only to a subdivision plan "which has been approved . . . by such planning commission or other body" and then until a period of three years has elapsed "from the date of approval of such subdivision plan." The plaintiffs' subdivision plan was neither approved nor submitted for approval.

Only one other assignment of error requires brief mention, that is, that the court erred in concluding that the plaintiffs were not entitled to damages from the commission. The court concluded that the conduct of the commission was not malicious. Its action was taken in an attempt to enforce the subdivision regulations. For acts or omissions occurring in the performance of a governmental function, a municipal official will not be held personally liable so long as he acts in good faith, in the exercise of an honest judgment, and not maliciously, wantonly, or in abuse of his discretion. *Pluhowsky* v. *New Haven,* 151 Conn. 337, 347, 197 A.2d 645; *Stiebitz* v. *Mahoney,* 144 Conn. 443, 448, 134 A.2d 71; *Wadsworth* v. *Middletown,* 94 Conn. 435, 439, 109 A. 246. The court found that the commission's contention that the 1963 regulations were applicable to the plaintiffs' land was correct in law although it held that the commission's attempt to assert the claim as a commission was procedurally improper. Also there is nothing in the record to show that the plaintiffs, in complying with the 1963 regulations, cannot fully utilize and recoup such expenses as they incurred in the preparation of engineering plans and plans prepared for the purpose of obtain-

ing the three building permits. The court could properly conclude that the plaintiffs failed to prove not only their allegations of improper conduct but also that the actions of the commission have caused them any damages for which recovery should now be allowed.

There is no error.

In this opinion the other judges concurred.