REQUESTED BY: Marion E. Ball, Director, Department of Water Resources, Lincoln, Nebraska.
Is a flood plain permit required of an applicant who seeks to construct or develop a residential or recreational project in a flood plain for which a commission floodway is not being enforced, when the applicant shows that the project was approved by a county or municipality prior to March 9, 1975, as part of a local comprehensive plan, subdivision plat or other scheme?
Yes, as long as the project would be an artificial obstruction.
In 1975 the Legislature passed LB 108 which became effective on March 9, 1975. This bill gave the Natural Resources Commission and the Department of Water Resources certain powers over flood plains and floodways where commission floodways were not already being enforced under sections 2-1506.01 through 2-1506.14, R.R.S. 1943, as amended. Section 4 through section 6 of LB 108 are presently codified as sections 2-1506.15 through 2-1506.17, R.S. Supp., 1976. Section 2-1506.15 provides in part:
 "It shall be unlawful for any person to permit any artificial obstruction to be located, used, or maintained in or on any floodway or flood plain for which a commission floodway is not being enforced pursuant to sections 2-1506.01 to 2-1506.10 and 2-1506.12 to 2-1506.14, except in accordance with section 2-1506.16. . . ."
Section 2-1506.16 generally requires any person to make application and obtain a permit from the Department of Water Resources before locating any artificial obstruction in or on floodways or flood plains. Section 2-1506.17 is the pivotal statute herein. It provides:
 "Sections 2-1506.15 and 2-1506.16 shall not affect any artificial obstruction of land use unless located in the floodway or flood plain after March 9, 1975." (Emphasis added.)
Section 2-1506.02(2) and (13) define the term `artificial obstruction' but the term `land use' is nowhere defined. The legislative history of LB 108 and previous enactments on this subject likewise provide no real clues to the latter term's meaning.
You currently have pending before you applications for permits to build single family dwellings and for the development of residential and recreational subdivisions in flood plain and floodway areas. Some of these applications are supported by subdivision plats, maps and various other zoning and planning documents. Certain of these documents bear county or municipal approval prior to March 9, 1975, some show approval after that date, and some indicate no evidence of local approval but are merely dated prior to March 9, 1975. This situation has prompted your inquiry since you are concerned about whether such local approval or other evidence of planning compliance before March 9, 1975, qualifies the applicant for the exemption in section 2-1506.17, thus relieving him of the requirement of obtaining a permit.
Clearly, such subdivision plats, maps and other documents do not ipso facto create artificial obstructions under the statutory definition of the term. The question, then, is whether any of those accompanying documents evidence the establishment of a land use which was located in the floodway or flood plain before March 9, 1975.
We believe that the term `land use' as employed in section2-1506.17 means the actual and present physical use of the land.
It must be an existing use which physically changes the nature of the land as opposed to some type of plan for such use. The acquisition of approval for zoning, subdivision or local planning purposes is not a land use within the meaning of section 2-1506.17. Such approval is preparatory to an actual land use. This conclusion is supported by the definition of the term `locate' as used in section 2-1506.17
which is found in section 2-1506.02(11):
"Locate shall mean construct, place, insert, or excavate."
These terms clearly suggest an existing physical use rather than an intended, permitted or planned use.
This definition would be compatible with judicial decisions involving the closely analogous area of nonconforming uses for zoning purposes. In County of Saunders v. Moore,182 Neb. 377, 155 N.W.2d 317 (1967), the defendants in April 1966 made plans to convert property from agricultural use into a trailer court. However, in September 1966, the county adopted zoning regulations which permitted only residential dwellings. The issue before the court was whether the defendants, prior to the effective date of the zoning regulations, acquired a vested interest in an existing nonconforming use, thus enabling them to continue and complete the project irrespective of the zoning regulations. The court stated:
 "A nonconforming use is an `existing use' which is contrary to the zoning regulations. And a permitted use is not a nonconforming use. [Citations omitted.] The general rule is, and this court has held, that an `existing use' means the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose. An `existing use' for business purposes ordinarily means a construction or use of the premises so that they are adaptable for the business purpose and the actual employment of the building, room, or land within the scope of the purpose. [Citations omitted.] With exceptions, not pertinent here, a vested interest in a nonconforming use under zoning regulations is a property right, and any statute or law purporting to take away that right is invalid. [Citation omitted.]
 "A contemplated or intended use standing alone is not sufficient. [Citations omitted.] To obtain a vested interest in a nonconforming use, a person, prior to the effective date of the regulation or ordinance making such use nonconforming and while violating no existing law or regulation, must cause either substantial construction to be made thereon or incur substantial liabilities relating directly thereto, or both. [Citation omitted.]
 "The rule to be deduced from the above authorities is that preliminary contracts or work which are not of a substantial nature and contracts or work consistent with the zoning ordinances and regulations are not considered to be substantial construction or liabilities relating directly to the intended use which has become nonconforming because of the change or adoption of the regulations or ordinances. [Citations omitted.]" Id at 378-79.
Another court, in Sherman-Colonial Realty Corp. v.Goldsmith, 155 Conn. 175, 230 A.2d 568 (1967), stated:
 "The mere filing of maps for the subdivision of a parcel of real estate does not necessarily immunize the subject property from the operative effect of subsequent subdivision regulations. . . . To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be `irrevocably committed' to that use." 230 A.2d at 572.
Other courts have held that platted but undeveloped land is not normally regarded as a `use' in zoning law for the purposes of establishing a nonconforming use. Burns v. CityPark of Des Peres, 534 F.2d 103 (8th Cir. 1976); Parks v.Board of County Commissioners, 11 Ore. App. 177, 501 P.2d 85
(1972). Thus, we conclude that the exemption in2-1506.17 applies only to uses which were actual, physically present and existing on March 9, 1975.