JOHN S. KARLS ET AL. *v.* ALEXANDRA REALTY CORPORATION ET AL.

NATHANIEL WOLF ET AL. *v.* JAMES J. SOTIRE ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued October 11, 1979—decision released January 1, 1980

*Frank H. D'Andrea, Jr.,* for the appellant-appellee (defendant Richard Ladestro in each case).

*John S. Karls,* for the appellees-appellants (plaintiffs in each case).

COTTER, C. J. The present actions were commenced by several property owners seeking to prevent the construction and occupancy of a single family residence on a neighboring 6.338 acre tract of land. The first cause of action was brought by the plaintiffs, John S. and Andrea B. Karls, against the Alexandra Realty Corporation (Alexandra), Richard Ladestro, who is the present owner of the

property in question, and James Sotire, the building inspector and zoning enforcement officer of the city of Stamford. The complaint alleged that the construction of the house by Ladestro was in violation of the zoning ordinances of Stamford thereby rendering invalid the building permit which had been issued for the construction.[1] In their prayer for relief, the plaintiffs sought a temporary and permanent injunction restraining any further construction on the property; restraining the defendant Sotire from issuing any further permits or a certificate of occupancy for Ladestro's house; and requiring all construction on the property to be removed. Following a hearing to the court, the temporary injunction was denied.

Almost three months after the denial of the temporary injunction, the second cause of action was commenced by the plaintiffs, Nathaniel and Joyce Wolf, against James Sotire. Ladestro was joined as a third party defendant. The Wolfs' complaint also alleged that the construction of Ladestro's house was in violation of the Stamford zoning ordinances and requested the issuance of a writ of mandamus "restraining" Sotire from issuing a certificate of occupancy and directing him to revoke the building permit that had been issued for the construction of the house. The two cases were consolidated and tried to the court. In the first case, the trial court found that the construction of the house was in violation of the zoning ordinances and issued an

---

[1] By amendment to their complaint, the plaintiffs added a second count alleging nuisance by reason of the construction and occupancy of Ladestro's house. This issue was not considered by the trial court and the plaintiffs have not assigned error in the trial court's failure to rule on the issue. Accordingly, the plaintiffs' claim of nuisance is deemed abandoned.

injunction restraining, inter alia, Ladestro from using the fourteen foot wide strip of land which served as an access to his property. From this judgment, Ladestro has appealed and the plaintiffs have cross appealed. In the second case, although it found that the construction of the house violated the zoning ordinances, the trial court denied the writ of mandamus and the plaintiffs have appealed from that judgment. The appeals have been consolidated and will be considered in a single opinion.[2]

A review of the finding of facts, which is not subject to material correction, in consultation with the memorandum of decision of the trial court; *New Haven Water Co.* v. *North Branford,* 174 Conn. 556, 562, 392 A.2d 456; discloses the following: In 1968, Alexandra was the record owner of a 7.323 acre parcel of land located in Stamford. Access from this parcel of land to Briar Brae Road was provided by a fourteen foot wide strip of land, most of it owned by Alexandra, running in a westerly direction from the road to the parcel of land. In May, 1968, the parcel of land owned by Alexandra was subdivided into two parcels, labeled "B" and "D" on map No. 8651 of the Stamford land records. (See appendix.) Contemporaneous with that subdivision, parcel B was conveyed to a neighboring landowner in exchange for parcel C. (See appendix.) Parcel C is precipitous, consists of ledge, is heavily wooded, and is approximately fifty-five feet wide running from parcel D in a northerly direction and fronting on Briar Brae Road. The subdivision had no effect on the shape or ownership of the fourteen foot wide strip of land.

---

[2] It is significant to note that these cases do not involve appeals from a decision of the zoning board or zoning commission.

In 1977, Ladestro and his wife contracted with Alexandra for the purchase of a parcel of land which included lot D, lot C and the interest held by Alexandra in the fourteen foot wide strip of land. The contract was contingent on the acquisition of a building permit authorizing the construction of a single family residence on lot D. The permit was approved in September, 1977, and the property was conveyed sometime in November, 1977. Shortly thereafter, Ladestro commenced construction of his house on lot D. By the time of the hearing on the temporary injunction, the foundation had been poured and the framing of the house had begun. Prevailing on the temporary injunction, Ladestro continued construction of his house which by the end of the trial was virtually completed with Ladestro having expended $135,000 on property that would be worth $200,000 when the house was fully completed.

The plaintiffs in both cases own property abutting the fourteen foot wide strip of land and have a right-of-way over that strip of land as their only access to Briar Brae Road. In addition to Ladestro's property, there are altogether five residences, including the plaintiffs', situated along the right-of-way, using it as access to the main road, so that if permitted, Ladestro would be the sixth user of the right-of-way. The plaintiffs' central complaint is that the right-of-way is inadequate for use by six families and that such an excessive use would result in irreparable injury to them.

The defendant Ladestro assigns error in the trial court's conclusion that the construction of a single family residence on lot D is in violation

of the Stamford zoning ordinances. The trial court found that lot D lies within an RA-1 zoning district which is restricted to one single family residence on a lot of at least one acre and having a 125 foot frontage on an approved road. The court found that there was no provision in the Stamford zoning ordinances which permitted a single family residence on the defendant's property. The defendant concedes that lot D does not have the requisite frontage nor does it fall within any of the exceptions to the frontage requirements.[3] Rather, Ladestro asserts that the building lot conforms to the zoning requirements under three separate provisions. The defendant contends that the construction of his house is permitted by article I, section 2A of the zoning ordinances which provides that the ". . . erection of a single family dwelling shall not, however, be prohibited on a lot in a single ownership . . . which is smaller than required, provided that the owner of any smaller lot did not own sufficient adjoining land at the time of adoption of these regulations to conform therewith, and provided, further, that all buildings on the lots are so designed and erected as to conform with the density district requirements in which such lot is situated." The defendant argues that although lot D is larger than the one acre required for an RA-1

---

[3] Article III, section 7o of the Stamford zoning ordinances provides that a lot within an RA-1 zoning district that does not have the requisite street frontage can nonetheless be used for a single family residence provided the lot ". . . has access to a street by means of an unobstructed legal accessway held in the same ownership as the accessway lot, that such accessway is at least twenty-five feet (25') wide and, on any record map dated after August 1, 1959, not wider than fifty feet (50') . . . ." In the present case, the fourteen foot right-of-way is too narrow and parcel C is too wide to conform to these accessway requirements.

zone, it is "smaller than required" because the access portion of the lot, i.e., the right-of-way, being fourteen feet wide, is smaller than the twenty-five feet width required by article III, section 7$o$. The defendant's construction of the exception provided in article I, section 2A does not comport with the clear wording of the section. The multiple references to "lot" make it clear that the exception applies to a building lot which is smaller than otherwise required and not to an accessway. Construing the exception to apply to building lots is appropriate considering the further requirement that the buildings, although on lots smaller than required, nonetheless conform to density district requirements. Since lot D is in fact larger than required in an RA-1 district, the defendant cannot avail himself of the exception provided in article I, section 2A.

The defendant next relies on article III, section 7I which provides that "[a]ny parcel of land with an area or a width less than that prescribed for a lot in the district in which such lot is situated . . . may be used as a lot for any purpose permitted in the district . . ." with the proviso that there is compliance with all other zoning regulations. This exception, the defendant contends, applies to lot D because the width of the right-of-way is less than that required by the regulations. The clear wording of the section relied on by the defendant indicates that the width exception applies to the parcel of land and not, as the defendant urges, to the accessway serving that parcel. The zoning regulations provide a minimum width requirement for an RA-1 district of fifteen feet for one side yard and thirty-five feet for both side yards. See Appendix B to the Stamford Zoning Regulations. Reference to the

map of the property reveals that lot D far exceeds those measurements so that the exception provided in article III, section 7I does not apply.

Thirdly, Ladestro assigns error in the trial court's conclusion that the construction of a single family residence on lot D was not a nonconforming use of that property which is authorized by article IV, section 10A of the Stamford zoning regulations.[4] "The rule concerning the continuance of a non-conforming use protects the right of a user to continue only the same use of the property as it existed before the date of the adoption of the zoning regulations. *Beckish* v. *Planning & Zoning Commission,* 162 Conn. 11, 16, 291 A.2d 208." *Macaluso* v. *Zoning Board of Appeals,* 167 Conn. 596, 600, 356 A.2d 885. It has been consistently required that the use existing at the adoption of the zoning regulations be actual and not merely contemplated. *Sherman-Colonial Realty Corporation* v. *Goldsmith,* 155 Conn. 175, 183, 230 A.2d 568; *Lebanon* v. *Woods,* 153 Conn. 182, 197, 215 A.2d 112; *Corsino* v. *Grover,* 148 Conn. 299, 308, 170 A.2d 267; *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 444, 86 A.2d 74. At the time the applicable Stamford zoning regulations became effective in 1951, there were no buildings of any kind on lot D or the larger tract of land from which it derived. Since there was no actual residential use of Ladestro's

[4] Article IV, section 10A of the Stamford zoning regulations provides: "Any building or use of land or building legally existing at the time of enactment of this Regulation, or of any amendments thereto, or authorized lawful permit issued prior to the adoption of these Regulations which does not conform to the provisions of these Regulations for the Use Districts in which it is located, shall be designated a non-conforming use. Such use may be continued but may not be extended or expanded, or changed to a less restrictive use as listed in LAND USE SCHEDULE in APPENDIX A."

property in existence prior to 1951, the trial court properly concluded that the current residential use of that property was not nonconforming. Furthermore, we cannot accept Ladestro's argument that the lot was nonconforming because it was "irrevocably committed" for use for a single family residence at the time the zoning regulations were enacted and has maintained its nonconforming status until the present time. See, e.g., *Sherman-Colonial Realty Corporation* v. *Goldsmith,* supra; *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* supra. The cases relied on by Ladestro require that to be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose. See *Sherman-Colonial Realty Corporation* v. *Goldsmith,* supra; *Lebanon* v. *Woods,* supra; *Corsino* v. *Grover,* supra; cf. *Wallingford* v. *Roberts,* 145 Conn. 682, 146 A.2d 588. In the present case, construction on lot D had not begun until more than twenty-five years after adoption of the zoning regulations. It cannot, therefore, be said that the property was irrevocably committed for use as a single family residence so as to qualify as a nonconforming use.

Having concluded that the construction of Ladestro's house on lot D is in violation of the applicable zoning ordinances, we consider Ladestro's claim that the injunction issued by the trial court was improper in light of the facts found.

In reviewing the grant of injunctive relief, we must look to the facts found by the trial court to

determine whether they are sufficient, as a matter
of law, to support that injunction. The trial court
found that the right-of-way is only fourteen feet
wide. In some places it is paved, in others only
graveled. The right-of-way is wide enough so that
only one car may pass over it at any given time.
When two cars going in opposite directions meet,
one operator is required to back into the nearest
driveway and permit the other to pass. In the
winter, the right-of-way had been blocked on a few
occasions by cars becoming stuck in the snow and
ice. Visibility on the right-of-way is poor. On one
occasion, the plaintiff Joyce Wolf was forced to
scramble over a snow bank to avoid being struck
by a vehicle proceeding down the right-of-way, and
her dog, which was on a leash at the time, was struck
by that vehicle. The court concluded that "the addi-
tion of one more illegal house," [5] i.e., Ladestro's,
on the already overdeveloped right-of-way would
increase the number of times the right-of-way
would be blocked, possibly preventing the passage
of an emergency vehicle; would increase the danger
to pedestrians and vehicles; and would increase the
constant inconvenience and annoyance of having
to back up into someone's driveway to allow an
oncoming car to pass. Although the court found
that the addition of Ladestro's house to the already
existing five residences using the right-of-way
would not affect the market value of the plaintiffs'
residences, it nonetheless concluded that sufficient
irreparable harm had been shown to warrant the
injunction. On the facts found, we cannot agree

[5] It appears that several of the residences already existing along
the right-of-way are also in violation of the frontage requirements
and are not nonconforming uses of their respective properties since
they also were constructed after the adoption of the zoning regula-
tions.

with the trial court's conclusion that the plaintiffs have satisfied their burden of proving the essential requisites for injunctive relief.

Any person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation. *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 180, 377 A.2d 280; *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 482, 138 A.2d 483; see also, 3 Rathkopf, The Law of Zoning and Planning (4th Ed.) c. 66. "The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the imminence of substantial and irreparable injury. *Bendell* v. *Johnson,* 153 Conn. 48, 51, 212 A.2d 199; 42 Am. Jur. 2d, Injunctions, §§ 48, 49; see *Herbert* v. *Smyth,* 155 Conn. 78, 85, 230 A.2d 235; *Brainard* v. *West Hartford,* 140 Conn. 631, 634, 103 A.2d 135." *Scoville* v. *Ronalter,* 162 Conn. 67, 74, 291 A.2d 222. It is not enough to show that the defendant has violated the zoning regulations. The plaintiff seeking injunctive relief bears the burden of proving facts which will establish irreparable harm as a result of that violation. See *Scoville* v. *Ronalter,* supra; *Crouchley* v. *Pambianchi,* 152 Conn. 224, 226, 205 A.2d 492; *Lavitt* v. *Pierre,* 152 Conn. 66, 77, 203 A.2d 289; *Lehmaier* v. *Wadsworth,* 122 Conn. 571, 191 A. 539. In the present case, although the plaintiffs have shown that they may possibly suffer irreparable harm, i.e., emergency vehicles blocked by a car stuck in the right-of-way, they have failed to demonstrate that such harm is imminent or that it will neces-

sarily be caused by the defendant's violation of the zoning regulations. In the absence of such a showing, an injunction cannot be issued.

Injunctive relief may not lie where it is predicated on the fears and apprehensions of the party applying for it or where it would be incompatible with the equities of the case; *DeCecco* v. *Beach,* 174 Conn. 29, 35, 381 A.2d 543; *Moore* v. *Serafin,* 163 Conn. 1, 11, 301 A.2d 238; *Nicholson* v. *Connecticut Half-Way House, Inc.,* 153 Conn. 507, 511, 218 A.2d 383; and likewise the power of equity to grant such relief may be exercised only under demanding circumstances. *Brainard* v. *West Hartford,* 140 Conn. 631, 634, 103 A.2d 135. The extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm. *Moore* v. *Serafin,* supra; *Scoville* v. *Ronalter,* supra. The trial court concluded that there was a possibility that the right-of-way would be blocked and a further possibility that it would be necessary for an emergency vehicle to pass over the right-of-way even though it was not found that such a vehicle had ever been prevented from reaching its destination. The conjunction of these possibilities does not rise to the level of substantial probability that the harm complained of will occur which is required as the basis for injunctive relief.

In addition, the harm complained of by the plaintiffs may only possibly be caused by the use of the right-of-way by members of Ladestro's household

or their guests or agents. In fact, it is more likely that the right-of-way will be blocked by a member of one of the residences already existing along the right-of-way than by someone from the Ladestro household. While the injunction granted by the trial court would reduce the probability that the alleged harm may occur, it will not prevent that harm. Where the injunction will not achieve its desired result, as in the present case, it should not be granted.

There is one other difficulty with the injunction issued by the trial court, namely, that the alleged harm was not imminent. The trial court found that the alleged harm was only a possibility. It may be caused by Ladestro or it may not. Even if caused by Ladestro, it may occur soon or it may not occur until sometime far in the future. Indeed, the injunction betrays itself. While the trial court concludes that the plaintiffs would suffer irreparable harm if Ladestro were allowed to occupy his house and use the right-of-way, the injunction is not to become effective until one year after it was issued. It is difficult to reconcile the terms of the injunction with the trial court's conclusion that the plaintiffs will suffer irreparable harm. Where the subordinate facts found by the trial court do not, as we have concluded, support the injunction issued, the injunction must be vacated.

In view of our determination that the trial court erred in finding irreparable harm to the plaintiffs, we need consider only briefly the plaintiffs' cross appeal in the first case and the plaintiffs' appeal in the second case.

In the first case the plaintiffs base their cross appeal on the ground that the trial court erred in

refusing to issue an injunction requiring the removal of Ladestro's house. It is clear, however, that such an injunction could not be issued in light of our determination that there was insufficient irreparable harm to the plaintiffs caused by the construction and occupancy of Ladestro's house.

The plaintiffs appeal in the second case from the denial of the writ of mandamus and assign error in the trial court's finding that the issuance of such a writ is barred by laches. The plaintiffs commenced their action for a writ of mandamus after Ladestro successfully defended against Karls' suit for a temporary injunction and five months after construction of Ladestro's house had begun. Under the circumstances, we cannot say that the trial court erred in concluding that the cause of action was barred by laches. See *Leary* v. *Stylarama of New Haven, Inc.,* 174 Conn. 217, 219, 384 A.2d 377; 3 Rathkopf, The Law of Zoning and Planning (4th Ed.) cc. 67, 68.

There is error in the first case, *Karls* v. *Alexandra Realty Corporation,* the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

There is no error in the second case, *Wolf* v. *Sotire.*

In this opinion the other judges concurred.

*(See Appendix on next page.)*

Appendix