927 F.2d 101
 Paul NATALE and Wendy Natale, individually and as parent and
guardian of Jarrod Natale, Plaintiffs-Appellees,
v.
TOWN OF RIDGEFIELD, Planning and Zoning Commission of the
Town of Ridgefield, John Katz, both individually and in his
capacity as Chairman of the Planning and Zoning Commission
of the Town of Ridgefield, Oswald Inglese, Planning Director
of the Town of Ridgefield, and Susan Manning, First
Selectman of the Town of Ridgefield, Defendants,
Planning and Zoning Commission of the Town of Ridgefield and
John Katz, both individually and in his capacity as Chairman
of the Planning and Zoning Commission of the Town of
Ridgefield, Defendants-Appellants.
 Nos. 1816, 1817, Dockets 90-7339, 90-7483.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 28, 1990.
Decided March 5, 1991.
 
 Vincent M. Musto and Michael P. Koskoff, Bridgeport, Conn. (Koskoff, Koskoff & Bieder, P.C., Bridgeport, Conn., of counsel), for defendant-appellant, John Katz.
 Ralph G. Elliot, Hartford, Conn. (Tyler Cooper & Alcorn, Hartford, Conn., of counsel), for defendant-appellant, Ridgefield Planning and Zoning Com'n.
 Jan A. Marcus, Westport, Conn. (Spirer, Nasser & Marcus, Westport, Conn., of counsel), for plaintiffs-appellees.
 Before NEWMAN, PIERCE and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Defendants-appellants John Katz and the Ridgefield Planning and Zoning Commission ("Commission") bring this interlocutory appeal from an order of the United States District Court for the District of Connecticut (Jose A. Cabranes, Judge ) denying their separate motions for summary judgment, pursuant to Fed.R.Civ.P. 56.
 
 
 2
 Plaintiffs-appellees, Paul Natale and Wendy Natale ("the Natales"), initiated this lawsuit pursuant to 42 U.S.C. Sec. 1983, seeking damages from the Town of Ridgefield ("Town"), the Commission, John Katz, personally and in his capacity as President of the Commission, as well as a number of other local officials. The Natales alleged that defendants unlawfully acted to preclude them from obtaining zoning and building permits in which they had a bona fide property interest. In addition, plaintiffs sought a permanent injunction prohibiting the Town and its agents from impeding them from obtaining permits for their lots.
 
 
 3
 In response, Katz and the Commission each moved for summary judgment, arguing that as a matter of law the Natales were not entitled to the requested permits and therefore could not assert a claim of property deprivation based on the denial of these permits. Katz also claimed that, as a government official, he was entitled to assert qualified immunity from suit. The district court, finding that a material question of fact existed as to the Natales' property right in the permits, denied both motions for summary judgment. This appeal followed.
 
 
 4
 For the reasons set forth below, we dismiss the Commission's appeal and we reverse the judgment of the district court as to Katz' claim of qualified immunity.
 
 BACKGROUND
 
 5
 The Town of Ridgefield's zoning regulations require that residential building lots measure at least three acres. A property owner who intends to develop for residential purposes a lot that is under three acres must obtain subdivision approval from the Commission before the Town will issue a building or zoning permit for the lot. When the regulation requiring "subdivision approval" was adopted in 1959, it was accepted that lots measuring less than three acres would be deemed validly subdivided if they had been recorded with the Town prior to the regulation's adoption. Accordingly, the owner of such lots was not required to obtain subdivision approval before building residential units on that property. In 1963, however, the Town enacted a provision that seemed to repeal this "grandfather clause" with respect to lots on which construction had not yet been started.
 
 
 6
 In 1985, the Natales purchased four abutting parcels of land--Lots 93, 94, 95 and 104--in Ridgefield. Each parcel measured between one and one-and-a-half acres. Although plaintiffs' four lots were registered with the Town prior to 1959, the previous owners did not begin construction on these lots prior to 1963. Consequently, a dispute arose between the parties as to whether the Natales could obtain zoning and building permits before the Commission granted subdivision approval.
 
 
 7
 Shortly after buying the lots, plaintiffs began seeking variances and permits from the Town in order to start developing their property. Initially, the plaintiffs instructed their agent to apply for zoning variances for each of the four lots. In March of 1986, the Ridgefield Zoning Board of Appeals ("ZBA") granted the requested variances. This decision allowed the Natales to then apply for other zoning and building permits.
 
 
 8
 Believing that plaintiffs needed to obtain subdivision approval before the Town could issue zoning and building permits for the lots, the Commission, led by Katz, convened in a closed session and passed a resolution directing the Town's Zoning Enforcement Officer ("ZEO") not to issue any zoning permits for the Natales' four lots. As a result, when plaintiffs later applied for a zoning permit for lot 95, the ZEO refused to issue it. In response, the Natales initiated a state court action against the Town, seeking an injunction prohibiting the Town from unlawfully impeding them from obtaining zoning and building permits. They also sought a writ of mandamus requiring the ZEO to issue the zoning permit in question. Soon thereafter, the Commission consented to rescind its directive and, in August 1986, the ZEO issued a zoning permit for lot 95.
 
 
 9
 On August 12, 1986, the Natales applied to the Town Building Inspector, James McManus, for a building permit for lot 95. McManus informed them that although their application had met all of the general requirements, the Town Counsel and the First Selectman had directed him not to issue the permit. After the Natales appealed this action to various local administrative bodies, the Connecticut State Code and Standards Committee ordered McManus to issue the requested building permit.
 
 
 10
 Subsequent to these events, the Natales amended their complaint in the state court action to request the court to compel McManus to issue zoning and building permits for all four of their lots. The Connecticut Superior Court granted partial summary judgment in favor of the Natales, and directed McManus to issue the building permit for lot 95. Natale v. Bogardus, No. 0289741, slip op. (Conn.Super.Ct. Aug. 28, 1987). However, the court declined to issue a writ of mandamus with respect to lots 93, 94 and 104, since no permit applications were pending for those lots. Additionally, the court denied the Natales' motion for injunctive relief.
 
 
 11
 In deciding Bogardus, the court found that the Natales' land was validly subdivided and that, under Connecticut law, they were not required to apply to the Town for subdivision approval before seeking various building and zoning permits. The court concluded that the Natales had "a clear right to the performance of the duty sought to be compelled" and that the town officials "ha[ve] no discretion with respect to the performance of that duty." Bogardus, No. 0289741, slip op. at 8.
 
 
 12
 Shortly after this decision was rendered, the plaintiffs applied to the Town for permission to make a "property swap." A property swap allows a landowner to exchange equal amounts of property on abutting lots in order to comply with setback regulations. The Town Planner refused to grant this application, but the ZBA promptly reversed this decision and approved plaintiffs' application.
 
 
 13
 The Natales then initiated the present action against the Town, the Commission, Katz, Oswald Inglese, the Town's Planning Director, and Susan Manning, the Town's Selectman, pursuant to 42 U.S.C. Sec. 1983. The court dismissed the claims as to defendants Inglese and Manning. Subsequently, Katz and the Commission filed motions for summary judgment. Both Katz and the Commission argued that the Natales had no constitutionally protected property right in any of the permit applications at issue. Additionally, Katz asserted qualified immunity. The district court denied these motions, finding that there existed a disputed issue of material fact as to whether the Natales had an entitlement in any of the permits in question. Both Katz and the Commission appeal from this decision.
 
 DISCUSSION
 I. Jurisdiction
 
 14
 Although the parties did not question our jurisdiction over these appeals, we are obliged to consider sua sponte possible jurisdictional defects. See Bermudez v. Smith, 797 F.2d 108 (2d Cir.1986) (per curiam); In re Adirondack Railway Corp., 726 F.2d 60, 62 (2d Cir.1984). Ordinarily, a party may not appeal a non-final order, such as the denial of a motion for summary judgment. See 28 U.S.C. Sec. 1291 (1988). However, because of the policy considerations underlying the doctrine of qualified immunity, "an order denying qualified immunity on undisputed facts is an appealable order." Bolden v. Alston, 810 F.2d 353, 356 (2d Cir.), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987); see Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Therefore, it is clear that we have jurisdiction over Katz' appeal.
 
 
 15
 No such exception to the general rule applies to the Commission's appeal. The Commission argues, however, that because the issues that Katz appeals are closely connected to the issues presented in the Commission's motion for summary judgment, this Court should exercise pendent appellate jurisdiction over its appeal.
 
 
 16
 "Pendent appellate jurisdiction is a procedural device that rarely should be used because of the danger of abuse." Akerman v. Oryx Communications, Inc., 810 F.2d 336, 339 (2d Cir.1987); see McCowan v. Sears, Roebuck & Co., 908 F.2d 1099, 1105 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990). Only in exceptional circumstances should litigants, over whom this Court cannot ordinarily exercise jurisdiction, be permitted to ride on the jurisdictional coattails of another party. Because no extraordinary situation is presented in this case, we decline to exercise pendent appellate jurisdiction and dismiss the Commission's appeal.
 
 II. Katz' Qualified Immunity Claim
 
 17
 In reviewing a district court's denial of a motion for summary judgment, we must apply a de novo standard of review, "taking as true the factual allegations of the non-moving party, and drawing all inferences from the underlying facts in appellee's favor." P.C. v. McLaughlin, 913 F.2d 1033, 1040 (2d Cir.1990) (citation omitted); see Dube v. State University of New York, 900 F.2d 587, 597 (2d Cir.1990). Consequently, we draw all inferences and resolve any factual ambiguities in favor of the Natales.
 
 
 18
 The central issue before us is whether Katz may assert qualified immunity from suit. A government official performing a discretionary function is entitled to qualified immunity provided his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see also P.C. v. McLaughlin, 913 F.2d at 1039; Robison v. Via, 821 F.2d 913, 920-21 (2d Cir.1987). Essentially, if it is objectively reasonable for an official to believe that he or she is acting within constitutional and statutory bounds, the official will be insulated from liability stemming from his or her conduct. In denying Katz' motion for summary judgment, the district court held that it could not "at this time and on this record find that Mr. Katz did not, at any time, violate clearly established rights of plaintiffs of which a reasonable person would have been aware." Jt.App. at 470. We disagree.
 
 
 19
 The threshold issue in determining the applicability of Katz' qualified immunity defense is whether the Natales had a "clearly established right" to the permits at issue. If plaintiffs did not have a clearly established right to the permits at the time Katz and the Commission attempted to block their issuance, Katz would be entitled to qualified immunity, since it would have been objectively reasonable for him to believe that his actions were lawful. See, e.g., Hawkins v. Steingut, 829 F.2d 317, 321 (2d Cir.1987).
 
 
 20
 In deciding whether a claim of entitlement to requested permits exists, the proper inquiry is "whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the [permit] application would have been granted." Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir.1985); see also Brady v. Town of Colchester, 863 F.2d 205, 213 (2d Cir.1988). Basically, our focus is on the extent of the issuing agency's discretion to grant or deny the permit in question. RRI Realty Corp., Inc. v. Village of Southampton, 870 F.2d 911, 918 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989).
 
 
 21
 At the time the Natales applied for the zoning permit, Katz had a reasonable belief that their land was not properly subdivided, giving the Town the discretion to deny their application. Because the prior owners of the Natales' lots had not started construction before the issuance of the 1963 regulation, Katz reasonably concluded that the lots did not meet the subdivision requirement. Katz premised this belief on the Connecticut Supreme Court's decision in Sherman-Colonial Realty Corp. v. Goldsmith, 155 Conn. 175, 183, 230 A.2d 568 (1967), interpreting the 1963 regulation's apparent repeal of the 1959 regulation's grandfather provision. In Sherman-Colonial, the court stated, "[t]he mere filing of maps for the subdivision of a parcel of real estate does not necessarily immunize the subject property from the operative effect of subsequent subdivision regulations." Id. at 183, 230 A.2d 568. Thus, Katz could reasonably assume that the Commission could require the Natales to obtain subdivision approval before the requested permits were issued. In sum, because there was ample justification for Katz' determination that the Natales did not have a right to the permits in question, it was objectively reasonable for Katz to believe that his actions would not deny them of any constitutionally protected rights.
 
 
 22
 Although the State court's decision in Bogardus held that the Natales did in fact have a right to the permits, at the time Katz acted to block the issuance of the permits, the Natales' entitlement was far from clear. Because we believe that there was a legitimate dispute as to whether the permit applications should have been granted, we find that Katz acted reasonably. Consequently, Katz is entitled to qualified immunity from any liability stemming from actions he took prior to Bogardus.
 
 
 23
 After Bogardus was decided, however, it would have been unreasonable for Katz to have acted to impede the Natales' efforts at obtaining building and zoning permits. The only adverse action that was taken against the Natales after the Bogardus decision was the Town Planner's denial of their property swap application. This determination was later reversed by the ZBA. While the Natales claim that such applications are granted as a matter of course, see Jt.App. at 261, they have not pointed to any state or local provision which deprives the Town of discretion to deny a property swap application. Moreover, the Natales have not shown that Katz played a role in rejecting their request for a property swap. Nevertheless, even assuming that Katz influenced the Town Planner's decision, it would not have been unreasonable for him to have given his opinion on whether a discretionary application should have been granted. Accordingly, we find that Katz is entitled to qualified immunity with regard to liability arising from the denial of the property swap.
 
 CONCLUSION
 
 24
 Based on the foregoing, we reverse the decision of the district court with regard to Katz and remand with instructions to grant Katz' motion for summary judgment. In addition, we dismiss the Commission's appeal.