[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On July 24, 1919, a map entitled "Barnum Avenue Estates Plan No. 2" was "received and recorded" by the town clerk of the Town of Stratford. The map depicted 115 lots. At the time the map was filed, neither a planning commission nor a zoning commission existed in Stratford. In 1921 a planning commission was established in Stratford.
The plaintiff is the successor in title to lot 97. The dimensions of lot 97 are, roughly, 54.20 feet by 103 feet. The lot is situated in an RS-4 residential zone. In such a zone, the zoning regulations require a minimum lot width of sixty feet and a minimum area of 7,500 square feet. Lot 97 is an undeveloped lot which, the plaintiff claims, exists in a neighborhood of similar sized lots, all of which have long since been developed with single family houses.
Between 1973 and 1992 the plaintiff or his predecessors in title applied to the Board of Zoning Appeals ("board") for variances of the minimum lot area and minimum lot width requirements of the zoning regulations. The first seven applications were denied. The seventh application for variances was granted in 1989. In 1990, the Superior Court sustained an appeal from that decision. The Appellate Court denied the plaintiff's petition for certification.
Thereafter, the plaintiff applied to the planning and zoning administrator for a certificate of zoning compliance and a building permit to construct a single family dwelling on lot 97. In Stratford, the planning and zoning administrator is charged with the responsibility of enforcing the zoning regulations. When the administrator denied the plaintiff's application, the plaintiff appealed to the board.[1] After a public hearing, the board denied the plaintiff's appeal. The plaintiff has now appealed to the Superior Court.
 II.
With certain exceptions not relevant here, General Statutes8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the Superior Court . . ." "`Board' means a . . . zoning board of appeals"; General Statutes 8-8(a)(2); such as CT Page 3374 the defendant Board here. In such an appeal, the court should make a finding of aggrievement. Baccante v. Zoning Board of Appeals,153 Conn. 44, 45, 212 A.2d 411 (1965); Fox v. Zoning Board of Appeals,146 Conn. 665, 667, 154 A.2d 520 (1959). The record establishes that the plaintiff is the owner of the subject property. As the owner of the subject property, the plaintiff is an aggrieved person. Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308, 592 A.2d 953 (1991); Rogers v. Zoning Board of Appeals, 154 Conn. 484, 488, 227 A.2d 91 (1967).
Preliminarily, it is well to note the standard to which this court is bound in its review of the board's decision. When an appeal is taken to the board from "any order, requirement or decision of the official charged with the enforcement of the zoning regulations," the board hears the matter de novo and exercises "all of the powers of the officer from whom the appeal has been taken. . . ." General Statutes 8-7; see Toffolon v. Zoning Board of Appeals,155 Conn. 558, 561, 236 A.2d 96 (1967); Piccolo v. West Haven,120 Conn. 449, 452, 181 A. 615 (1935); Caserta v. Zoning Board of Appeals,23 Conn. App. 232, 236-37, 580 A.2d (1990), reversed, 219 Conn. 352,593 A.2d 713 (1992), cert. granted, 223 Conn. 922, 614 A.2d 820 (1992), decision sub judice SC 8665; see also Boehm v. Anne Arundel County,54 Md. App. 497, 459 A.2d 590 (1982); Hayes v. Smith, 92 R.I. 173,167 A.2d 546 (1961); Brown v. Montgomery, 354 Mo. 1041, 1049, 193 S.W.2d 23,27 (1946); In re McInerney, 47 Wyo. 258, 34 P.2d 35 (1934); 4 Anderson, American Law of Zoning (3d. Ed.) 22.05. p. 14; 3 Yokely, Zoning Law and Practice (4th Ed.) 19-1, p. 190. Once a zoning board of appeals has acted and "has stated the reasons for its action, a reviewing court may determine only whether the reasons given are supported by the record and are pertinent to the decision." Iannucci v. Zoning Board of Appeals, 25 Conn. App. 85, 89, 592 A.2d 970
(1991). "If [as here] the board fails to give the reasons for its actions . . . the trial court must search the record to determine whether a basis exists for the action taken." Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732, 546 A.2d 919 (1988), affirmed,211 Conn. 76, 556 A.2d 1024 (1989).
 III A
The plaintiff's first claim is that lot 97 is exempted from compliance with the zoning regulations by virtue of General Statutes8-26a. That statute provides: CT Page 3375
 a) Notwithstanding the provisions of any general or special act or local ordinance, when a change in the subdivision regulations is adopted by the planning commission of any town, city or borough, or other body exercising the powers of such commission, no subdivision plan which has been approved, prior to the effective date of such change, by such planning commission or other body, and filed or recorded with the town clerk, shall be required to conform to such change.
 (b) Notwithstanding the provision of any general or special act or local ordinance, when a change is adopted in the zoning regulations or boundaries of zoning districts of any town, city or borough, no lot or lots shown on a subdivision plan for residential property which has been approved, prior to the effective date of such change, by the planning commission of such town, city or borough, or other body exercising the powers of such commission and filed or recorded with the town clerk shall be required to conform to such change.
Since it appears that lot 97's nonconformity arises only out the zoning regulations, it is subsection "b" of 8-26a on which the plaintiff relies.
A planning commission did not exist in Stratford in 1919 when the map on which lot 97 was depicted was filed. Therefore, in order for the plaintiff to prevail on this claim he must prove that, prior to the effective date of the zoning regulations to which lot 97 does not conform, that map was "approved . . . by . . . an [other] body exercising the powers of such [planning] commission, and filed and recorded with the town clerk. . . ."
Although the plaintiff argues in his brief that, prior to 1921, the Board of Selectmen of the Town of Stratford possessed planning powers, he cannot prevail on this ground for two reasons. Firstly, there is no evidence that the Board of Selectmen ever approved a map on which lot 97 was shown. Secondly, this court has recently held that prior to 1921, the Board of Selectmen did not possess the powers of a planning commission. Johnson v. Zoning Board of Appeals, Judicial District of Fairfield, NO. 294990, memorandum of decision (1993). CT Page 3376
The plaintiff also argues that the action of the town clerk in receiving and accepting the map in 1919 on which lot 97 was first depicted constitutes approval within the ambit of General Statutes8-26. This claim is flawed for three reasons. Firstly, there is no evidence that the town clerk ever "approved" that map. To "approve" means "to have or express a favorable opinion of." Webster's Ninth New Collegiate Dictionary 1991). For a public official to "approve" a thing requires that she "determine that it is proper, and make that fact known to all . . . with absolute certainty, by some visible, unmistakable and enduring mark, to wit, by written declaration attested by his signature." New York New England R.R. Co. v. City of Waterbury, 55 Conn. 19, 23-24, 10 A. 162 (1887). This the town clerk in 1919 did not do. Secondly, the town clerk in 1919 did not exercise the powers of a planning commission. General Statutes (Rev. 1918) 1853, entitled "Maps and Copies," then provided:
 "When any person having an interest in land shall have caused it to be surveyed, and a map of the survey to be made, and shall have appended thereto a certificate of the surveyor that it is substantially correct, such map may be received and placed on file in the office of the clerk of the town where said land is situated, and shall thereupon be deemed part of the deeds referring thereto, and a copy thereof may be produced in court accordingly; and every town clerk shall make and certify copies of any map on file in his
Quite clearly this statute confers none of the legislative powers of a planning commission to promulgate regulations nor administrative powers to approve, disapprove or modify a subdivision plan; Timber Trails Corp. v. Planning Zoning Commission, 222 Conn. 380, 387-88,610 A.2d 620 (1974); but at most directs that the town clerk perform a ministerial obligation of receiving and filing maps bearing the requisite certificate. Cf. Strong's Case, Kirby 345 (Conn. 1787). Thirdly, General Statutes 8-26a(b) requires both that a residential subdivision plan be "approved" by a body exercising planning powers and that the plan be "filed or recorded with the town clerk." It must be presumed that the legislature intended that these two requirements be of a different nature and not identical or redundant. This court must "presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." Turner v. Turner, CT Page 3377219 Conn. 703, 713 595 A.2d 297 (1991). While the plaintiff may have shown that a map or plan was "filed and recorded with the town clerk," he has not shown that any body exercising the powers of a planning commission ever approved the map.
To enjoy the protection of "the statute, a plaintiff must bring himself squarely within its provisions." Sanders v. Officers Club of Connecticut, Inc., 196 Conn. 341, 349, 493 A.2d 184 (1985) This he has failed to do. The board did not act illegally in denying the plaintiff's appeal from the planning and zoning administrator's denial of plaintiff's application for a certificate of zoning compliance and a building permit on the grounds that the plaintiff's lot was exempt from the zoning regulations by virtue of General Statutes 8-26a(b).
 B.
The plaintiff's second claim is "that maps filed without approval prior to the adoption of subdivision or zoning regulations immunize the remaining, undeveloped lots where the property was irrevocably committed to lots of the smaller size prior to the adoption of the regulations." In support of this claim the plaintiff cites Sherman-Colonial Realty Corporation v. Goldsmith, 155 Conn. 175,183, 230 A.2d 568 (1967). This court concludes that Sherman-Colonial is inapposite.
In Sherman-Colonial, "the named plaintiff, the owner, filed two maps in the office of the Ridgefield town clerk showing a proposed subdivision of approximately 141 acres of land into 100 building lots. At that time there were no subdivision regulations in Ridgefield, and such a filing was the accepted manner of subdividing real estate. Effective March 1, 1959, the commission adopted its first subdivision regulations, and article 17, 17. of those regulations provided that `they shall not apply to any subdivision filed on a map in the Office of the Town Clerk prior to March 1, 1959.' Effective July 13, 1963, the commission adopted new regulations which contained no provision corresponding to article 17, 17 of the 1959 regulations. The 1963 regulations did, however, contain a section . . . which authorized the planning commission to permit variances" whereby the amount and nature of work done in the development of the subdivision prior to the effective date of the 1963 regulations was a consideration. Sherman-Colonial Realty Corporation v. Goldsmith, supra, 177-178. The named plaintiff owner had expended $6,500.00 for engineering work pertaining to the subdivision; the plaintiff purchaser had expended about $3,500.00 for engineering work and other expenses connected with the obtaining of CT Page 3378 three building permits, although it appeared that this was expended subsequent to the enactment of the 1963 regulations. Id., 178. At no time did either plaintiff seek a variance under the 1963 regulations. Ibid.
In "1964, the purchaser obtained from the building inspector three building permits to construct houses on three of the lots." Id., 179. In response, the planning commission "instituted suit against the plaintiffs and the building inspector . . . [seeking] an injunction against the plaintiffs to restrain them from selling lots in the subdivisions and a declaratory judgment determining the validity of the three permits issued by the building inspector." Ibid. The plaintiffs reacted by suing the commission and its individual members, alleging that the commission's suit was "malicious, illegal, oppressive and was brought with a wanton and reckless disregard" of the plaintiffs' rights. Ibid. "Judgment was rendered for the commission and its members in the suit against them and", on procedural grounds, "for the subdivision owner and developer and the building inspector in the action brought against them by the commission." Id., 180. The plaintiffs, owner and developer, appealed the judgment against them in the action they had brought. That appeal "placed squarely in issue" whether the 1963 subdivision regulations could be applied to plaintiffs' land. The Supreme Court held that they could, stating:
 The mere filing of maps for the subdivision of a parcel of real estate does not necessarily immunize the subject property from the operative effect of subsequent subdivision regulations. Otherwise, "a property owner, by the process of map filing, could completely foreclose a zoning authority from ever taking any action with respect to the land included in the map, regardless of how urgent the need for regulation might be." Corsino v. Grover, [148 Conn. 299, 314, 170 A.2d 267 (1961)]. The court found that the plaintiffs "demonstrated no use of a lot or lots owned by them in the subdivisions which established a vested right to continue a use non-conforming to the subdivision regulations effective July 13, 1963." Although the plaintiffs assigned this conclusion as error, the claim has not been pursued in their brief, and it is therefore considered as abandoned. Short Beach Cottage Owners Improvement Assn. v. CT Page 3379 Stratford, 154 Conn. 194, 201, 224 A.2d 532. There is nothing in the record to indicate that the plaintiffs actually used the property or expended any money in physically changing the nature of the undeveloped land or that they cannot recoup in a conforming use of the land the engineering expenses they have incurred. "To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be `irrevocably committed' to that use. Fairlawns Cemetery Assn., Inc. v. Zoning Commission, 138 Conn. 434, 443-445, 86 A.2d 74; Wallingford v. Roberts, 145 Conn. 682, 684, 146 A.2d 588." Lebanon v. Woods, [153 Conn. 182, 197, 215 A.2d 112 (1965)]. Since the plaintiffs' land was not "irrevocably committed" to development in lots of a size smaller than that permitted by the 1963 regulations, there was no nonconfirming [sic] use as to lots of that size when the subdivision regulations were adopted, and the [trial] court properly concluded.
(Emphasis added) Id., 183-184.
The claim of the plaintiff in this case that Sherman-Colonial, confers legal nonconforming status on an undeveloped lot where other lots in a pre-regulatory defacto subdivision are improved is refuted by the Sherman-Colonial court's conclusion that there was no nonconforming use "[s]ince the plaintiffs' land was not `irrevocably committed' to development" of undersized lots. (emphasis added) Id., 184. While it is less than clear from the opinion and record, it appears that the only concurrence of lots between the two plaintiffs in that case was the three lots for which the plaintiff developer sought permits, not the other 97 lots depicted on the map filed by the plaintiff owner. Id., 177, 179. Subsequent appellate case law also does not support the plaintiff's claim here. See Karls v. Alexandria Realty Corporation, 179 Conn. 390, 399, 426 A.2d 784
(1980); Neumann v. Zoning Board of Appeals, 14 Conn. App. 55, 59,539 A.2d 614, cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988) ("Viewed solely as a separate lot prior to the adoption of the zoning regulations, the . . . property did not thereby attain nonconforming use status at the adoption of those regulations."). CT Page 3380
That a parcel of land is depicted on a map which has been filed on the land records prior to the advent of zoning regulations or subdivision regulations does not render that parcel a legal, nonconforming lot, automatically exempt from the subsequent enactment of those laws. Sherman-Colonial Realty Corporation v. Goldsmith, supra 183; Lebanon v. Woods, supra Corsino v. Grover, supra. Where land is "irrevocably committed" to a particular use, General Statutes8-2 will protect that use from the subsequent enactment of zoning laws. General Statutes 8-2 provides in pertinent part that zoning "regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." However, this statute does not protect preexisting nonconforming lots, although a local regulation may provide such protection. Archambault v. Wadlow, 25 Conn. App. 375,379-80, 594 A.2d 1015 (1991).[2]
The plaintiff's final claim is that the board's denial of her petition was so unreasonable and arbitrary as to amount to an abuse of the discretion in it. In view of the court's disposition of the first two claims, the plaintiff was not entitled to a building permit and a certificate of zoning compliance because her lot did not comply with the minimum lot width requirements of the zoning regulations. State ex rel. LaVoie v. Building Commission, 135 Conn. 415, 422-423,65 A.2d 165 (1949).
The appeal is dismissed.
LEVIN, J.