[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR TEMPORARY INJUNCTION, COSTS,FINES AND ATTORNEY'S FEES
The plaintiff in this matter is Robert A. Burke, Zoning Enforcement Officer of the Town of Canton. The principal defendants are Jason's Farmington River Access Area, Inc., ("Jason's") a Connecticut corporation with its principal place of business in New Hartford; Joseph G. Bosco, who owns 60 percent of the stock of Jason's and who serves as president and treasurer; and John Casey, vice-president of Jason's. Jason's River Club, ("the club") is also a named as a defendant. Pursuant to an application for injunction and order to show cause dated July 13, 1994, and a subsequently filed amended verified complaint dated August 4, 1994, plaintiff seeks a temporary injunction pursuant to General Statutes § 8-12, claiming that defendants are operating a tubing business on the Farmington River with a disembarkation location on property in Canton, in violation of Town of Canton zoning regulations. Plaintiff also seeks fines, costs and attorney's fees. Hearings were held on August 4, and 11, 1994. Both sides then submitted initial briefs, and responsive briefs. The court has reviewed the exhibits submitted, the full transcript of testimony given, the exhibits, the written submissions, and has viewed the scene in Canton.
For the reasons stated below, the court grants the town's application.
Where a municipality seeks injunctive relief in order to enforce compliance with a local zoning ordinance, the municipality is not required to prove irreparable harm or inadequate remedy at law, as is normally the case. The municipality need only show a violation of the ordinance. Town of Farmington v.Viacom Broadcasting, Inc., 10 Conn. App. 190, 197 (1987);Johnson v. Murzyn, 1 Conn. App. 176, 180 (1984). Justification CT Page 8652 for this rule is based, in part, on the fact that in enforcing a town's zoning regulations the town is acting on behalf of all of the town's property owners "to enforce their right" to require conformity with zoning regulations as the quid pro quo for their own submission to the restrictions imposed on their property. Id., at 180. As Johnson also notes, in such situations, the granting of injunctive relief rests within the trial court's discretion. In evaluating such cases, the court should consider the gravity and willfulness of the violation and the potential harm to the defendant.
The court will not attempt to set out all of the evidence presented. In summary, upon review of the entire record, the court finds that the following salient facts were proven.
The plaintiff, Robert A. Burke, is the Zoning Enforcement Officer of the Town of Canton, and has been for approximately six years. Pursuant to § 72.1 of the town's zoning regulations, he is empowered to enforce those regulations. Voluntary compliance with the regulations is essential to the town's ability to manage and control growth and development, in an orderly, fair fashion.
The defendant, Jason's, was organized for the purpose of renting inner-tubes to be used to float down the Farmington River from an access point in New Hartford to a point of disembarkation in Canton. Jason's is using land located between Powder Mill Road in the Town of Canton and the westerly bank of the Farmington River, where renters of the tubes exit the river. Joseph G. Bosco, is the record owner of said land since 1993. The land is located in an AR-1 zone, zoned for single-family, residential use.
On June 18th of this year, the individual defendants began operating Jason's tube rental business, renting inner-tubes to the public and transporting its customers from the point at which they exit the river, in the Town of Canton, at the property mentioned above, back to the point of origin in the Town of New Hartford. The property located in the Town of Canton is part of one business enterprise which operates in two towns, New Hartford and Canton. Typically, each renter returns rental tubes to Jason's in Canton, where a commercial vehicle operated by Jason's transports the customers back to the point of origin in New Hartford. CT Page 8653
Throughout the Town of Canton, the Farmington River and land upland 100 feet from each of its banks, is designated a Farmington River Protection Overlay District ("FRPO District" pursuant to § 59 of the regulations.
During the month of June, prior to the weekend of June 18, 1994, plaintiff Burke became aware of Jason's through an advertisement in a local newspaper. At that time, there were no activities relating to the business. He sent a letter to Mr. Bosco in an attempt to establish informal contact. He received no response. On June 18, 1994, Burke visited Jason's in Canton. He observed a U-Haul moving van which, through contacts with the state police, he had reason to believe would be used in the transport of tubes. He visited the point of origin in New Hartford where he spoke to the defendant Casey and was told by Casey that the tubing business was in operation and that tubes were being picked up at the Canton property. Casey indicated that he was in the business of renting tubes for floating on the river. Burke observed Casey solicit business from four customers who were walking toward the property in their bathing suits and Burke heard Casey explain that they were at a place where tubes could be rented, that they could step inside and get their tubes, and that they would be launched from that location, float down the river, and be picked up in Canton. While discussing the matter with Burke, Burke testified, Casey said that he was going to conduct the business, that he didn't care about the regulations, that the town could sue him in court, he would see the town there. Burke served a Cease and Desist Order on Casey. It was the only such order he has served in the past year.
On June 21, 1994, defendants Bosco and Casey went to Burke's office where they talked about the cease and desist order which had been issued. Defendants Bosco and Casey indicated they wanted to continue to use the property for tubing and they asked if there was any legal way to do that. Burke told them the only legal way to proceed was to follow the town's zoning regulations. Burke told them that they could not conduct the business as they were doing because the property was not zoned for business usage.
Defendants have never received any special exception, site plan approval, or other permit to allow them to operate a tubing operation. Nor have they appealed the Cease and Desist Order to the Canton zoning board of appeals. CT Page 8654
Joseph Bosco testified that he saw the cease and desist order on the same day it was issued. Bosco also testified that he filed a zoning application with the town to have his enterprise recognized as a club, after having been informed by Burke that a club could be a permitted use. The application was withdrawn. Bosco testified that he hoped to make a profit with Jason's. Bosco also identified a zone change application he had submitted in 1991, relating to the property at the center of the instant dispute. Exhibit M. The application indicates that Bosco had entered into an option to purchase the subject property, and that in order to make improvements in connection with the applicant's tubing business, "it will be necessary to change the zoning designation from the current AR-1 to an SB designation." Bosco acknowledged under oath that the town refused to change the zone in 1991 in response to his application, indicating that the town had been "stonewalling" him and that he had attempted repeatedly to resolve his differences with the town to no avail.
When asked why he started Jason's before applying for and receiving zoning permits, Bosco stated "Basically just to get started. . . Why? Because we wanted to get started." Tr. at 165-66. Since June 18, 1994, when the Cease and Desist Order was served, defendants have continued to operate a tube rental business from the Canton property.
The evidence also indicated that defendants' actions are widely known in Canton.
Legal Analysis
This case presents the court with a narrow question: has the town demonstrated that the defendants are violating the town's zoning regulations? The issue before the court in this limited proceeding is not whether the property at issue is properly zoned, or whether the town's zoning regulations should be changed.
The court finds that the plaintiff has proven that defendants are using the subject property to engage in a commercial or business activity for profit in violation of the zoning regulations, specifically §§ 6.1, 21, 53, and 59, when read together. See § 6.1 of the town's zoning regulations, "Permitted Uses," which provides that "Any use not specified as permitted CT Page 8655 in the district is prohibited." The use to which the property is being put is not permitted under the regulations given the facts of this case.
It is apparent from the testimony — including Mr. Bosco's admission that he was operating the tubing venture to make money — that defendants are engaged in a "commercial" or business activity as that term is normally used, meaning, an activity the goal of which is to make a profit. Counsel for defendant conceded this point, essentially, at oral argument on August 19, 1994. In the absence of a definition of "commercial" in the regulations, a common-sense definition must be used. See General Statutes § 1-1, "Words and phrases," which provides that "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language. . ." The same holds true for zoning regulations. Review of the applicable sections of the zoning regulations does not disclose any section under which Jason's activities could be viewed as permitted. Defendants' creative claim that they are operating a "club" or "park" or "recreation area" brings to mind a story attributed to Abraham Lincoln. He used to refer to a boy who, when asked how many legs his calf would have if he called a tail a leg, replied "five," to which the response was made that calling a tail a leg does not make
it a leg. N. McClure, Abe Lincoln's Yarns and Stores, (1902), at page 409. Similarly, calling a for profit tubing venture a "park" or a "club" or "recreational" activity does not make it less of a commercial pursuit. Irrespective of what defendants choose to call Jason's, they cannot obscure the fact it is being run for the primary purpose of making a profit, based on their own admissions.
The court notes that the subject property is within an AR-01 zone, a zone designated Farming River Overlay Protection District, and a flood plain area. However, in the court's view, the type of activity defendants are engaging in is not permitted in any of these designated areas under the circumstances presented in this case.
The record contains no indication that the defendants took formal steps to argue before any town board or commission that there was a pre-existing, nonconforming use of the property to which they were entitled. See Zachs v. ZBA, 218 Conn. 324
(1991). They claim now, however, that this is the case. The town vigorously contests this claim. The court does not CT Page 8656 find defendants' argument persuasive based on the record to date.
The statute relating to nonconforming uses is General Statutes § 8-2. It states in relevant part with respect to applicable zoning regulations that:
 ". . . Such regulations shall not prohibit the continuance of any nonconforming use, building, or structure existing at the time of the adoption of such regulations. Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use. . ."
To acquire the status of a nonconforming use, it is not enough that the use was merely planned for or contemplated.Karls v. Alexandra Realty Corp. , 179 Conn. 390, 398 (1980). The property must be so utilized as to be "irrevocably committed" to the use. Sherman-Colonial Realty Corp. v. Goldsmith,155 Conn. 175, 183 (1967). For a use to be a protected nonconforming use, it must be lawful and it must be in existence at the time the zoning regulation making the use nonconforming was enacted. Fuller, Land Use Law and Practice, § 52.2, "Conditions for Continuation of Nonconforming Uses." An accepted policy of zoning is to prevent the extension of nonconforming uses.Hyatt v. ZBA, 163 Conn. 379 (1972).
In this case, the evidence falls well clear of establishing that a pre-existing, nonconforming use existed. Defendant Bosco testified that for some time in 1980, defendants ran a tubing operation on the Canton property, then owned by Joseph P. Wilusz. The testimony does not disclose if this was done with or without the approvals of Mr. Wilusz, and why this activity ceased. The evidence does not indicate if any such previous use was legally established at the time, in conformity with existing regulations. Helicopter Associates Inc. v. Cityof Stamford, 201 Conn. 700, 712 (1986); West Hartford v.Rechel, 190 Conn. 114, 118 (1985). There is nothing in the record to indicate the intention of the former property owner, Wilusz, to maintain a tubing use. Defendant Bosco testified that he believed the regulations were amended in 1982 or 1983. There is thus no evidence in the record that the nonconforming CT Page 8657 use existed at the time the regulations were amended; in fact, Bosco's testimony suggests that the contrary is the case. See also § 10.1.1 of the regulations, which provides that any nonconforming use discontinued for a continuous period of one year may not be reestablished. Moreover, as noted, Exhibit M, the 1991 zone change application provides a clear indication that defendant Bosco then believed that a zone change was legally required to permit him to use the property, which he had not yet purchased, for a tubing business. The court rejects defendants' pre-existing, nonconforming use claim because the present state of the record, and the law, do not support it.Friedson v. Westport, 181 Conn. 230 (1980).
Defendants hint in their brief, and suggested at argument on August 19, 1994, that plaintiff Burke was somehow improperly motivated in his actions in this case because he prepared the cease and desist order prior to actually observing tubing-related activities on June 18. There is nothing whatever in the record to support these vague insinuations. To the contrary, the record indicates only that plaintiff Burke has attempted, vigorously and in good faith, to enforce the zoning regulations as he understands them. Surely, he cannot be faulted for acting when he became aware that the defendants has openly proclaimed an intention to commence activities which he believed to be in contravention of the town's zoning scheme.
Defendants also claim that they are being treated differently from other commercial enterprises in town, one of which is operated by the state. The limited record of this case does not provide any basis for the court to conclude that defendants are being treated unfairly. If defendants wish to pursue this argument — or wish to argue that the zoning regulations are somehow being unfairly applied to them — they may, of course, take action to press their claims and enforce their rights in the appropriate forum. What they may not do, however, is place themselves above zoning rules and procedures which other town residents choose to obey, sometimes at great expense and inconvenience. Moreover, if unequal enforcement were occurring, the proper remedy would be for the town to vigorously enforce the regulations with respect to all parties, not to ignore violations in which defendants or anyone else may be engaging.
Based on evidence produced, the court therefore concludes that the town has demonstrated that defendants are in CT Page 8658 violation of the town's zoning regulations and that the plaintiff will probably succeed on the merits.
Given the open and flagrant nature of the violation, the court concludes that it is serious and if permitted to continue unchallenged will erode the legitimate functioning of the zoning enforcement officer to enforce the town's zoning regulationsJohnson v. Murzyn, 1 Conn. App. 176, 180-81 (1984) and significantly hamper his ability to do his job in enforcing the regulations.
In evaluating the harm to the defendants, the court agrees with the town that depriving defendants of proceeds of activities that they are engaging in, in violation of the regulations, ought not to be weighed in the balance against the town. See City of Norwalk v. Eugene Morano, 12 CLT 45 (November 17, 1986). The court concludes, therefore, that the equities weigh in favor of the town's request for injunctive relief.
Consequently, the court hereby grants the application for temporary injunction. A copy of the court's order is appended hereto. The court orders defendants' counsel to bring this order to his clients' attention immediately on receipt of this memorandum. Defendants are hereby ordered to cease and desist from engaging in the activities they are presently engaging in, as indicated in the cease and desist order. This order is to continue in effect until further order of court.
Costs, Fine and Attorneys' Fees
Pursuant to § 8-12, the town also seeks a penalty of $2,500.00 against defendants Bosco, Casey and Jason's for their failure to comply with the cease and desist order within ten days after service. On consideration of the full record, the court finds that these defendants have willfully failed to comply with the cease and desist order within ten days after service. The court's conclusion is based on the evidence presented, and reasonable inferences drawn from the evidence, including but not limited to admissions made by Bosco during his testimony; and statements made by Casey to Burke, as testified to by Burke. Therefore, it is the order of the court that defendants Bosco, Casey and Jason's are each ordered to pay to the treasurer of the town of Canton fines of $1,500.00, for a total of $4,500.00. No fine is ordered as to the club. CT Page 8659
The town also seeks costs, fines, and attorney's fees, pursuant to General Statutes § 8-12, which states that a court shall impose penalties on those who willfully commit, take part in, or assist in any violation, in an amount of as much as $100.00 per day. The town seeks fines of $100.00 per day against defendants Bosco, Casey and Jason's from June 18, 1994, to the date of this decision. As noted, the court finds, upon review of the whole record, that the violations in the instant case are willful. In an attempt, however, to permit defendants to do demonstrate they will henceforth seek redress through appropriate channels, and not by ignoring lawful regulations and procedures, the fine will not apply to past conduct. However, commencing on Friday, September 2, 1994, a fine of $100 per day shall be imposed on Bosco, Casey, and Jason's, for each and every day, commencing on said date, during which they refuse or fail to comply with the cease and desist order.
Finally, the town seeks attorney's fees following a hearing. Counsel for plaintiff and defendants are hereby ordered to confer and attempt in good faith to reach an agreement as to what amount of attorney's fees, and costs, are reasonable. Plaintiff's counsel shall report to the court by no later than September 2, 1994, indicating whether such an agreement has been reached. If no agreement has been reached by that date, a hearing shall be held at 10:00 a.m. on Friday, September 9, 1994, to consider costs and attorney's fees.
DOUGLAS S. LAVINE JUDGE, SUPERIOR COURT