BORIS SILITSCHANU ET AL. *v.*
FREDERICK GROESBECK, JR.
(13265)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued April 12—decision released July 19, 1988

*John Timbers,* for the appellants (plaintiffs).
*James E. O'Donnell,* for the appellee (defendant).

COVELLO, J. The first issue in this appeal is whether a septic system constructed on a residential lot to serve a commercial building situated on an adjacent commercial lot constitutes a violation of the Stamford zoning regulations. If so, the further issue remains as to whether the plaintiff neighbors are entitled to injunctive relief restraining the construction of the commercial building.

The plaintiffs have appealed from a decision of the Appellate Court concluding that the Stamford zoning regulations do not apply to septic systems. We granted certification, limited to these issues: (1) whether the Appellate Court correctly determined that the Stamford zoning regulations do not forbid a commercial building from locating its septic system on residentially zoned property; and (2) whether the Appellate Court correctly determined that the plaintiffs would not be injured by the defendant's alleged violation of the Stamford zoning regulations.

The plaintiffs, Boris Silitschanu, Fred Mantel, Joanna Page, Newcome Barger and Grace Ramos Maiola,[1] are owners of real property in Stamford that adjoins or is in close proximity to the real property of the defendant, Frederick Groesbeck, Jr. The plaintiffs instituted an action in Superior Court seeking to enjoin the defendant from constructing a three story office building on commercially zoned land with its appurtenant septic system to be located on an adjoining residentially zoned lot. An attorney state trial referee found that the defendant was entitled to proceed with the construction of the proposed building notwithstanding the fact that the septic system serving the building would be installed on residentially zoned land. The trial court accepted the report of the referee and rendered judgment for the defendant.

---

[1] On March 6, 1987, the Appellate Court granted the motions of the plaintiffs Maiola and Mantel to be withdrawn from the appeal.

The Appellate Court affirmed the judgment of the trial court. *Silitschanu* v. *Groesbeck,* 12 Conn. App. 57, 529 A.2d 732 (1987). In doing so, the Appellate Court first determined that, because a septic system is not a "structure," the Stamford zoning regulations do not apply to its construction. Id., 62–63. The court then concluded that "even if the Stamford zoning regulations prohibit the placement of the defendant's septic system on his adjoining residential property, the plaintiffs have failed to prove that they are entitled to an injunction." Id., 64. We disagree that septic systems are not governed by the Stamford zoning regulations. Nonetheless, we affirm the judgment of the Appellate Court because we agree with its conclusion that the trial court did not abuse its discretion in denying the requested injunction.

## I

Article I, § 1, of the Stamford zoning regulations provides that "this Zoning Code . . . [may] designate, regulate and restrict the location and *use* of buildings, structures and land . . . . " (Emphasis added.) Article I, § 2, of the zoning regulations provides that "[n]o building or structure shall be erected . . . or maintained . . . nor shall any building, structure or land be *used* or be designed for any *use* other than is permitted . . . . " (Emphasis added.)

Article III, § 4, of the Stamford zoning regulations divides the territory of the city into districts designated as residential, commercial and industrial. The purpose of these designations is to prohibit the use of property "for any other purpose than the use permitted in the zone in which such property is located." Stamford Zoning Regs., art. III, § 4. The Stamford Land Use Schedule sets forth permitted uses in residential, commercial and industrial zones and authorizes the location of residential structures in residential zones and commer-

cial structures in commercial and industrial zones. Stamford Zoning Regs., Appendix A, pp. 59–63. Pursuant to Article III, § 5, of the Stamford zoning regulations, commercial use of a structure located within a residential lot is not authorized. Thus, the plain language of the zoning regulations clearly demonstrates that any use of a structure inconsistent with the regulations is not authorized.

We need to decide whether a septic system intended for commercial purposes located within the confines of a residentially zoned lot is a use of a structure contrary to the Stamford zoning regulations. Article II, § 3 (97), of the zoning regulations provides: "[D]efinitions . . . . Structure: Anything constructed or erected which requires location on the ground or *attached to something having a location on the ground."* (Emphasis added.) In order to fulfill its purpose, a septic system must be "attached" to the building it serves. "[W]ords employed in zoning ordinances are to be interpreted in accord with their natural and usual meaning." *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 153, 543 A.2d 1339 (1988); *Lawrence* v. *Zoning Board of Appeals,* 158 Conn. 509, 511, 264 A.2d 552 (1969). The plain language of the zoning regulation, therefore, compels the inescapable conclusion that a septic system is a "structure" within the meaning of the Stamford zoning regulations. See *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn 45, 59, 523 A.2d 477 (1987); *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 196, 491 A.2d 1058 (1985).

The public health code of this state lends further support to the proposition that a septic system is a "structure." A septic tank and leaching system, into which the liquid contents of a septic tank are discharged after certain organic processes have occurred, are necessary components of a "septic system." Regs., Conn. State

Agencies § 19-13-B103b (c).[2] The Technical Standards for the Design and Construction of Subsurface Sewage Disposal Systems published by the commissioner of health services define and prescribe requirements for subsurface sewage disposal systems and state that a " '[l]eaching system' means a *structure,* excavation or other facility designed to allow settled sewage to percolate into the underlying soil . . . . " (Emphasis added.) Connecticut Public Health Code, Technical Standards for the Design and Construction of Subsurface Sewage Disposal Systems (1982) § 19-13-B103, I (E).

The regulatory scheme articulated by the plain language of the Stamford zoning regulations and the relevant provisions of the public health code lead us to conclude, therefore, that a septic system is a "structure" within the meaning of the Stamford zoning regulations and its use for commercial purposes on residential property is not authorized.

II

The foregoing conclusion must be viewed within the legal context in which it was presented to the court, i.e., an application for an injunction. This was neither an appeal from a decision of a zoning authority nor an action claiming money damages. The Appellate Court agreed with the conclusion of the trial referee that " '[s]ince the Plaintiffs have offered no evidence to show that the building's septic system and rear yard will differ in any material way from septic systems and rear yards pertaining to residential structures, they have failed to demonstrate that the residential property in question is being used in a manner inconsistent with its zoning classification.' " *Silitschanu* v.

---

[2] Section 19-13-B103b (c) of the Regulations of Connecticut State Agencies provides in relevant part: " 'Subsurface sewage disposal system' means a system consisting of . . . a septic tank followed by a leaching system."

*Groesbeck,* supra, 65. Accordingly, it concluded that "the trial court did not abuse its discretion in denying the plaintiffs' requested injunction." Id.

We disagree that this was the sole consideration appropriate to the determination of whether an injunction should issue. The trial referee heard evidence to the effect that had the septic system been located on the commercially zoned property, the resulting building would have been substantially smaller. The plaintiffs offered evidence designed to show that the defendant's building would generate increased traffic, alter the character of the neighborhood and diminish the value of their properties. All of this evidence dealt with the consequences of the construction of a commercial building on the defendant's property. A commercial building of *some* size on the commercially zoned lot, however, *is* authorized by the Stamford zoning regulations. If the plaintiffs had established that they would be irreparably harmed because the building was larger than it was legally authorized to be, then they might have established their entitlement to the requested injunction.

The principal evidence offered by the plaintiffs as to the impact of a larger commercial building as distinguished from a smaller commercial building was a set of photographs depicting a marginally diminished view of a nearby woodlot. The photographs were introduced as evidence of the plaintiffs' conjecture as to the impact of the proposed building on the scenic view.[3] Such evidence, representing nothing more than the plaintiffs' speculation as to the potential harm posed by the pro-

---

[3] The plaintiff Fred Mantel had taken the photographs. He testified regarding them:

"A. That's the parcel that I sold to [Groesbeck] in—it is a slope but I *think if* the building is built that high, I *probably* will see part of the windows and—

"Q. The arrow indicates—you put the arrow on the picture and it indicates your view of where the building would be located *if it were constructed.*" (Emphasis added.)

posed building, does not rise to the level of a demonstration of irreparable injury.

"It is not enough to show that the defendant has violated the zoning regulations. The plaintiff seeking injunctive relief bears the burden of proving facts which will establish irreparable harm as a result of that violation." *Karls* v. *Alexandra Realty Corporation,* 179 Conn. 390, 401, 426 A.2d 784 (1980). There was no demonstration of irreparable harm flowing from the construction of a commercial building larger than authorized, in contrast to a smaller one. " 'The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court . . . . ' *Scoville* v. *Ronalter,* 162 Conn. 67, 74, 291 A.2d 222 [1971]." Id. "In the absence of such a showing [of irreparable injury], an injunction cannot be issued." Id., 402.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.