[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
This case arises out of a dispute between property owners. The plaintiffs, William and Bette Stewart, own property located at 999 Groton Long Point Road, Noank, Connecticut. The defendants, Michael and Carol Gothie, own property located at 1000 Groton Long Point Road, Noank, Connecticut. The defendants built a waterfront home directly across the street from the plaintiffs' home in the plaintiffs' line of sight of Palmer's Cove (Fisher's Island Sound).
The defendants' property is in the flood zone and is subject to the Coastal Management Act of the Connecticut General Statutes and the Zoning Regulations of the Groton Long Point Association, Inc. The plaintiffs CT Page 6851 allege that the defendants violated certain regulations of the Groton Long Point Zoning Act (regulations) and the Coastal Area Management Act (CMA) during the construction of their home. The plaintiffs further allege that the zoning commission and the zoning officers ignored the zoning violations when issuing and approving the defendants' building permits, zoning permits and certificates of occupancy. The plaintiffs seek injunctive relief or, alternatively, money damages for the diminution of their property value that resulted from the construction of the defendants' home.
Procedural History
On November 27, 1999, the plaintiffs filed an amended five count complaint against the defendants, Michael Gothie, Carol Gothie, the Groton Long Point Association, Inc. Zoning Commission (zoning board), and Gordon Lange, zoning enforcement officer for the Groton Long Point Association, Inc. (zoning officer). Counts one and two allege irreparable harm and financial injury against the Gothies. Count three alleges a prescriptive easement against the Gothies. Counts four and five allege irreparable harm against the zoning board and the zoning officer.
On April 13, 2000, the court, Hurley, J., granted the defendants zoning board and zoning officer's motion to strike counts four and five on the ground of governmental immunity. Prior to trial, the court, McLachlan,J., granted the defendants' motion for summary judgment as to the third court on the ground that the statute of frauds bars the creation of an oral view easement. On November 16, 2000, the defendants filed an answer and the following special defenses: res judicata, collateral estoppel, laches and unclean hands.
The case was tried on November 17, 18, 30, 2000 as to counts one and two.
 DISCUSSION
A. SPECIAL DEFENSES
 1. Res Judicata and/or Collateral Estoppel
The defendants argue that the plaintiffs' claims are barred by res judicata and collateral estoppel by Kroll v. Steere, Superior Court, judicial district of New London at New London, Docket No. 545009, andKroll v. Zoning Board of Appeals, Superior Court, judicial district of New London at New London, Docket No. 548803.
"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of CT Page 6852 former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . Also, the issue must have been fully and fairly litigated in the first action. . . ." (Citations omitted; internal quotation marks omitted.) Walsh v.Stonington Water Pollution Control Authority, 250 Conn. 443, 460,736 A.2d 811 (1999).
In Kroll v. Steere, supra, Docket No. 545009, Donna Kroll brought an action against Kenneth Steere, the Groton Long Point zoning officer, for selective enforcement of zoning regulations regarding the placement of a sign on Kroll's property. Attached to the action was an action by plaintiff, William Stewart, against Steere for selective enforcement of zoning regulations regarding the defendants' property. On May 4, 1998, the court, Hurley J., dismissed the count as to the selective enforcement of the zoning regulations regarding the defendants' property for improper joinder.[1] Therefore, the issue of whether the construction of the defendants' house violated the CMA or zoning regulations has not been fully and fairly litigated.
The defendants also argue that Kroll v. Zoning Board of Appeal, supra, Docket No. 548803, bars the plaintiffs' case. In Kroll v. Zoning Board ofAppeal, the plaintiffs, Donna Kroll and William Stewart, challenged the zoning board's issuance of a temporary certification of occupancy for the development of and construction on the defendants' property. The plaintiffs alleged that the zoning board violated and overlooked the CMA in approving the defendants' plans and that the denial of the plaintiffs' appeal was not supported by evidence. The court, Parker, J., dismissed the case for mootness because, the temporary certification of occupancy had expired and a case challenging the permanent certification of occupancy for the defendants' property had been brought and was pending (which was later withdrawn. See Kroll v. Groton Long Point Zoning Board of Appeals, Superior Court, judicial district of New London at New London, Docket No. 549784.) This case was dismissed for mootness, therefore, the issues of zoning violations in regard to the defendants' property was never fully and fairly litigated.
The third case, Kroll v. Groton Long Point Zoning Board of Appeals, supra, Docket No. 549784, was withdrawn by the plaintiffs. The issues that are present in this case: whether the defendants' property was constructed in violation of the zoning regulations and the CMA, have not been fully and fairly litigated and finally decided. Therefore, neither res judicata nor collateral estoppel bars the plaintiffs' present case. CT Page 6853
2. Laches
The defendants argue that the doctrine of aches bars the plaintiffs' action. The defendants' third special defense as stated in their answer and special defenses, filed November 16, 2000, is that laches bars the plaintiffs' claim because the plaintiffs failed to appeal the dismissal of the second count in Kroll v. Steere, supra, Docket No. 545009. The defendants present a different reason for why the doctrine of laches bars plaintiffs' case in their trial memorandum. The defendants argue that laches bars the plaintiffs' claim because the plaintiffs failed to challenge the actions of the defendants and the previous owners of the property before the construction of the defendants' home.
The property across the street from the plaintiffs was one large lot which was subdivided into three lots around 1988. The defendants purchased one of the subdivided lots from the previous owners, which is now 1000 Groton Long Point Road. The defendants argue that the plaintiffs knew that the property was to be subdivided in the late 1980's and saw that fill was being placed on the defendants' lot even before it was owned by them, but the plaintiffs did not take any action at that time. The defendants argue that the plaintiffs never approached the defendants with their concerns about the property when the plaintiffs became aware that the defendants were to build a home on the property.
The plaintiff, William Stewart, testified that he was aware of the subdivision of the land across the street in the late 1980's and that three subdivisions of the property had been created. William Stewart also testified that he knew that land fill had been added to the lot. In their complaint, the plaintiffs allege that "[s]ubsequent to the division of the Culver property, Hannon and Ferris, their agents and or servants added fill in the form of dirt and rocks to the easterly end of the lot that is not the Gothies property in violation of the Coastal Management Act." (Complaint, Count one, ¶ 10.) The defendants argue that they have been prejudiced by the plaintiffs' delay in challenging the construction of their house because they would not have built the home if they knew of the plaintiffs' intentions to prevent the construction of the house.
"The burden is on the party alleging laches to establish that defense."Burrier v. Burrier, 59 Conn. App. 593, 596, 758 A.2d 373 (2000), citingCummings v. Tripp, 204 Conn. 67, 87, 527 A.2d 230 (1987). "The defense of laches has application only when there is established unreasonable, inexcusable, and prejudicial delay in bringing suit." Castonguay v.Plourde, 46 Conn. App. 251, 265, 699 A.2d 226 (1997), citing Cummings v.Tripp, supra, 204 Conn. 88. "Laches consists of two elements. First, CT Page 6854 there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question. . . ." (Citations omitted; internal quotation marks omitted.) Burrier v. Burrier, supra,59 Conn. App. at 596.
In Cummings v. Tripp, the court found that the plaintiffs were not guilty of laches even though there was a delay of seven years between an initial letter of complaint and the filing of the action and the defendants expended $77,000 on repairs of the property. In Castonguay v.Plourde, the court found no laches because the plaintiffs notified the defendants as soon as the plaintiffs were aware that their panoramic view would be compromised by the construction of the defendants house.
In this case, the plaintiffs did not take any action against the prior owners who subdivided the property and added fill to the property. Numerous law suits were filed concerning the building of the subject house. The first one, Kroll v. Steere, supra, Docket No. 545009, was filed on January 13, 1998, three months after the Gothies obtained their zoning permit. Unlike in Cummings v. Tripp, the defendants here, bought a legally constituted building lot long after the time to challenge it had passed and after most of the claimed alterations to it had occurred. They expended monies not only for the lot, but for preliminary house plans, drawings, and site work and were commencing construction when the first law suit was brought (that lawsuit was not against the defendants in this case. See Kroll v. Steere, supra, Docket No. 545009.) The complaint in this case was dated February 6, 1999, the building permit was issued October 6, 1997, and the certificate of occupancy was issued October 31, 1998. Thus, the defendants had bought the land and actually commenced construction when they first became aware of these claims. To allow the plaintiffs to claim that the wrongdoing of others should be held against the defendants here, would be inequitable. The court will find the plaintiffs are barred by laches: the delay was inexcusable and defendants would be severely prejudiced. Burrier v. Burrier, supra, 59 Conn. App. 593.
B. Injunctive Relief
Not only is the plaintiffs' action barred by laches, there is no merit to the plaintiffs' claim for injunctive relief. The plaintiffs seek injunctive relief against the defendants for the alleged unlawful construction of the defendants house and the resulting diminution of the plaintiffs' property value. "The granting of an injunction rests within the sound discretion of the trial court and [i]n exercising its discretion, the court . . . may consider and balance the injury CT Page 6855 complained of with that which will result from interference by injunction. . . . The relief granted must be compatible with the equities of the case." (Citations omitted; internal quotation marks omitted.)Castonguay v. Plourde, 46 Conn. App. 251, 266, 699 A.2d 226 (1997). Individuals can bring a private injunction action to enforce zoning regulations where the plaintiff can show that they have or will sustain irreparable injury. Cummings v. Tripp, supra, 204 Conn. 75. "[W]here a violation of a zoning regulation results in special damage to an individual, the injured party has a right to seek injunctive relief." Id, 90.
The Connecticut Supreme Court has clarified that "`[a]ny person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation without exhausting administrative remedies.'" (Emphasis omitted.) Simko v. Ervin,234 Conn. 498, 504, 661 A.2d 1018 (1995), quoting Cummings v. Tripp, supra, 204 Conn. 75. In applying this particular exception, the Connecticut Supreme Court has expressly noted: "[w]e cannot state too strongly, however, the necessity for clear and precise allegations of specific and material claims of damage in order to establish the threshold requirement for this exception to the exhaustion doctrine." Cummings v.Tripp, supra, 204 Conn. 76.[2]
To bring an injunction action to remedy a direct injury from a zoning violation, the private property owner must establish (1) that injury from failure to grant an injunction is imminent; (2) the injury is substantial; (3) the injury is irreparable and there is a substantial probability that unless an injunction is issued the party seeking it will suffer irreparable harm. Karls v. Alenxandria Realty Corporation,179 Conn. 390, 401-3, 426 A.2d 784 (1980); Silitschanu v. Groesbeck,12 Conn. App. 57, 65, 529 A.2d 732 (1987), affirmed 208 Conn. 312,543 A.2d 737 (1988); International Assn. of Firefighters, Local 786 v.Serrani, 26 Conn. App. 610, 614, 602 A.2d 1067 (1992). The Connecticut Supreme Court has held that the mere depreciation of land values alone cannot sustain an injunction sought on the ground of nuisance without a strong factual showing. See Nicholson v. Connecticut Half-Way House,Inc., 153 Conn. 507, 512, 218 A.2d 383 (1966); see also Brainard v. WestHartford, 140 Conn. 631, 634, 103 A.2d 135 (1954).
The construction of the defendants' home was completed in October 1998. If the court granted the plaintiffs' injunction, with an order to tear down the defendants' home, the injury to the defendants would greatly outweigh the injury to the plaintiffs. The court must weigh the "injury complained of with that which will result from interference by injunction." Castonguay v. Plourde, supra, 46 Conn. App. 266. Therefore, CT Page 6856 injunctive relief is not appropriate in this case.
The plaintiffs also seek monetary damages based on a nuisance claim. "At common law, property owners have the right to seek an injunction as well as damages for a nuisance affecting the enjoyment of their property. This right is supplementary to the right to seek injunctive relief from the zoning authorities for the violation of a zoning ordinance. . . . In deciding whether a nuisance exists, a court will often find it necessary to interpret the pertinent zoning regulations because the nuisance issue is intertwined with the lawfulness of the conduct involved." Cummings v. Tripp, supra, 204 Conn. 79.
The defendants argue that the plaintiffs did not allege a claim of nuisance in their complaint. "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations in his complaint. . . . A plaintiff may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery."Criscuolo v. Mauro Motors, Inc., 58 Conn. App. 537, 544-45, 754 A.2d 810
(2000). The plaintiffs have not alleged a claim for nuisance in their complaint. The court will, however, discuss whether the plaintiffs proved a nuisance claim at trial because the existence of a nuisance is intertwined with the request for injunctive relief.
"To establish a nuisance, four elements must be proven: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; and (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages . . . Whether any of those essentials exist ordinarily is a question of fact. . . ." (Citations omitted.)Granger v. A. Aiudi Sons, 60 Conn. App. 36, 40-41, 758 A.2d 417
(2000).
The plaintiffs rely heavily on the case of Cummings v. Tripp, supra,204 Conn. 67. In Cummings v. Tripp, the plaintiffs filed suit against the defendant seeking injunctive relief and damages for an alleged violation of the East Lyme zoning regulations and an alleged common law private nuisance. The defendant owned a two-story dwelling and seven cottages, which the defendants rented out on a daily or weekly basis. The plaintiffs claimed that this use of the premises violated the East Lyme zoning regulations and constituted a nuisance. The appellate court upheld the trial referee's granting of an injunction and the finding that the defendants' use of the property had "caused the plaintiffs much annoyance, personal inconvenience and irritation," including noise and CT Page 6857 disturbance to the plaintiffs. Id, 90. The appellate court upheld the trial courts refusal to award money damages to the plaintiff because "absent a finding of nuisance, the plaintiffs [were] not entitled to money damages." Id, 98.[3]
In Cummings v. Tripp, the trial referee, in order to decide the nuisance claim, had to consider the lawfulness of the defendants' conduct and thus decide the issue of whether the East Lyme zoning ordinances had been violated. In deciding the issue of damages, the court necessarily had to interpret the applicable zoning ordinances. The court will now address whether the plaintiffs proved the elements of nuisance at trial.
The first two elements of nuisance have been established by the plaintiffs. The plaintiffs have suffered an injury to their property that is continuous. The court must now interpret the alleged zoning regulation violations to determine whether the plaintiffs have established that (1) the defendants unlawfully used their property and (2) the nuisance was a proximate cause of the plaintiffs' injuries. The court will address the following alleged violations:
(a) The plaintiffs allege that addition of fill to the eastern end of the lot was a violation of the zoning regulations. The plaintiffs allege that several feet of fill was added to the lot in order to expand the buildable portion of the property. The plaintiffs argue that the zoning regulations were not complied with because the building plans state that fill was to be used from basement excavation but Michael Gothie testified that fill came from a neighboring lot.
Despite William Stewart's testimony that he saw fill delivered by truck to the defendants' property and photographs submitted as evidence of fill being pushed onto the property by a tractor driven by Michael Gothie, it was not established at trial that the defendants added fill to the property that increased the buildable portion of the lot. The plaintiffs acknowledge that the owners prior to the defendants increased the buildable portion of the land with the addition of fill. No evidence was submitted that showed how much fill was added to the property by the defendants, beyond two truck loads of top soil. Even if the court took the evidence presented as indicating that the defendants placed additional fill on their property, that went beyond the fill approved of in the building permit, this additional fill was added after the house was nearly completed. The construction of the house did not rely on the addition of the fill. The violation that resulted from the addition of the fill was not a proximate cause of the plaintiffs' injuries. Any such violation would not support a finding of nuisance, because it is not a proximate cause. CT Page 6858
(b) The plaintiffs argue that the defendants violated General Statutes § 22(a)-109(a), [22a-109 (a)],[4] because a rock wall that was erected by the defendants was not submitted in the coastal plans. The plaintiffs submitted evidence that showed the existence of a rock wall on the easterly portion of the defendants' property where there was no rock wall prior to the construction on the property. The plaintiffs argue that this is a violation of § 22a-109 (d) because a shore line flood and erosion control structure is required to be submitted to the Department of Environmental Protection (DEP) and the coastal site plan does not mention the existence of the rock wall. There was no evidence that these rocks were from off-site, ie. not from the foundation excavation. The construction of a wall could be a violation of General Statutes § 22(a)-109, [22a-109 (a)], if it were not submitted for approval, but in any event the "rock wall" is not a proximate cause of the plaintiffs' injury. The placement of the rocks does not result in the blockage of the plaintiffs' view. Any such violation would not support a finding of nuisance, because it is not a proximate cause.
(c) The plaintiffs argue that section 4.3.1 of the zoning regulations, which requires 25 feet of frontage from water for front yard set back and has width requirement of 60 feet was violated by the defendants. The plans show the width of the house at 55 feet. The plaintiffs argue that section 1.25 and 1.26 were violated because the plans do not have a "sideline" and the rear lot line is perpendicular to street. The defendant argues that no evidence was offered by the plaintiffs that contradicted how the side, rear and front lines were calculated as testified by Mr. Munn, the president of the Groton Long Point Association and member of the zoning board, Kenneth Steere and Gordon Lange. The evidence shows that the lot conformed to the minimum width requirements. The evidence presented did not establish that section 4.3.1, 1.25 or 1.26 were violated. Any such violation would not support a finding of nuisance, because it is not a proximate cause.
(d) The plaintiffs presented evidence relating to the following: (1) The zoning officer violated General Statutes § 22a-109 (a), which requires the filing of a coastal plan before issuance of zoning and building permit, because he filed the coastal site plan five months after permits issued. 1998; (2) The zoning board violated General Statutes § 22a-109 (f),[5] which requires the board to publish approval of site within 15 days of approval, because the commission published the approval on July 30, 1998, more than three months after approval; (3) The zoning board violated General Statutes § 22a-109 (c)(d), which requires the submission of a plan to construct a flood and erosion control structure to the DEP within 15 days of submission to the board; CT Page 6859 (4) General Statues 8-3 (f)[6] was violated by Steer and Lange because they did not certify in writing that the structure was not in conformity with the zoning regulations; (5) General Statutes § 22a-109 (h) was violated by Lange and Steere because they did not certify in writing that the building plan had been reviewed and approved with regulations of the chapter; and (6) Section 10.4.1 of the zoning regulations, which requires the submission of a detailed plan with the development permit, including the elevation of lowest floor of all structures, was violated because Steere did not receive detailed plans and based his review on less than required information. The court will not determine whether or not the above alleged violations were proved at trial because the violations were not committed by the defendants, and the defendants are not responsible for the acts of the zoning board or its members. Therefore, the above allegations of violations of land use regulations do not support the finding of a nuisance.
(5) The plaintiffs presented evidence that the construction of the basement was in violation of the zoning regulations because the defendants did not comply with the building permit. The plaintiffs point to regulation section 10.5.2.3 that provides that areas below flood line cannot have a living space and section 10.5.2.3 that prohibits electrical outlets, plumbing or other utilities to be below base flood elevation. Frank Iannaco testified that the defendant, Michael Gothie, told him they had a full basement built, including a wood stove, electrical outlets and a laminated beam. The laminated beam, electrical outlets and fireplace were not in the plans submitted to the zoning board and were not in the building permit. Section 10.5.2.1 requires that construction in zone A must have lowest floor (including basement) above base flood elevation and section 10.2.4.1 defines basement as "portion of building having its floor subgrade on all sides." The plaintiffs argue that a trench was dug out around the foundation to avoid having the basement called a basement, thus avoiding a violation of sections 10.5.2.3 and 10.2.13. The plaintiffs did not, however, present evidence as to how the construction of the basement impacted the overall size and height of the house. Whether there were violations of the regulations in the construction of the basement is irrelevant because no evidence was presented that the construction of the basement resulted in the house being larger. The basement's construction is not a proximate cause of the plaintiffs' injury, therefore, the above allegations of violations of zoning regulations do not support the finding of a nuisance.
The above allegations of zoning violations or statutory violations were required to be proven to satisfy the third element of a nuisance claim. There was not expert testimony presented to establish either that the zoning regulations had been violated or any such violations were a proximate cause of the plaintiffs' injury. The plaintiffs either failed to CT Page 6860 show a violation or the violation is not a proximate cause of the plaintiffs' injury. The plaintiffs have not proven a claim of nuisance. Therefore, the plaintiffs' request for money damages is denied.
 CONCLUSION
In this case, the plaintiffs have a diminished water view. Although it is unclear how much they have been damaged by the construction of the defendants' house, it is clear that the unfettered view of Fishers' Island Sound the plaintiffs once enjoyed is no longer. Despite this loss, the plaintiffs have failed to establish any cause of action which would require the defendants to compensate them for their loss.
The court finds the issues for the defendants.
McLachlan, J.