[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR TEMPORARY INJUNCTION
This is a case of first impression. The matter is before the court on a Motion for Temporary injunction. The defendants, Connecticut Waste Oil, Inc. (CWO), and its president and responsible corporate officer, Joseph Peruti, operated a business in which it collected and transported waste such as PCBs, waste oil and all types of hazardous waste. CWO operated under a license issued by the plaintiff, the commissioner of environmental protection, pursuant to General Statutes § 22a-454
(a). This license was effective from July 1, 1997, until June 30, 2001. Although the commissioner informed CWO of the expiration date and that a timely renewal application must be filed no later than March 2, 2001, CWO did not submit the renewal application until March 30, 2001. The commissioner accepted the application after CWO paid a $50 late fee pursuant to General Statutes § 22a-6j(b). The commissioner made no findings at the time the application was accepted. The commissioner thereafter denied CWO's renewal application on June 26, 2001, four days CT Page 17246 before the expiration of the then existing license.
On June 29, 2001, CWO filed a petition with the commissioner for a declaratory ruling as to the June 26, 2001 denial of its renewal application. The defendants' contention is that the commissioner wrongfully denied the defendants' renewal license and that this decision is stayed until the commissioner issues a declaratory ruling. The CWO has continued to transport waste since the expiration of the license.
The commissioner filed a motion with the court for a temporary injunction on August 24, 2001, claiming that CWO was in violation of § 22a-454 (a). The defendants filed an opposition to the plaintiff's motion for a temporary injunction on September 7, 2001. The commissioner thereafter filed a reply memorandum of law in support of his motion for a temporary injunction.
"There is a four-part test for the issuance of a temporary injunction: (1) the plaintiff ha[s] no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent [the injunction]; (3) the plaintiff [is] likely to prevail . . .; and (4) the balance of the equities favor[s] the issuance of the injunction]." (Citations omitted.) Boutilier v. TheSaybrook Manor, Superior Court, judicial district of Middlesex at Middletown, Docket No. 94366 (July 26, 2001, Arena J.), citing WaterburyTeachers Assn. v. Freedom of Information Commission, 230 Conn. 441, 446,645 A.2d 978 (1994). "In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." (Internal quotation marks omitted.) Moore v. Ganim, 233 Conn. 557, 569 n. 25, 660 A.2d 742
(1995). "The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the imminence of substantial and irreparable harm." Silitschanu v. Groesbeck,12 Conn. App. 57, 64, 529 A.2d 732 (1987), aff'd., 208 Conn. 312,543 A.2d 737 (1988). "This criterion necessarily requires consideration of the probable outcome of the litigation." Griffin Hospital v.Commission on Hospitals Health Care, 196 Conn. 451, 457, 493 A.2d 229
(1985).
The commissioner first argues that the continuation of CWO's business after its permit expired is a blatant violation of § 22a-454 (a) and therefore seeks a temporary injunction to enjoin such activity. The defendants object to the motion on various grounds. The defendants' grounds do not have merit.
The defendants first argue that the denial of the defendants' permit CT Page 17247 renewal application is a violation of their constitutional property right in the permit and cannot be taken away without due process. This argument is incorrect because there is no constitutional violation. The defendants' constitutional argument is based on the deprivation or suspension of an already-existing permit which is not applicable to the present situation which involves the denial to issue a new permit. Suspension or revocation of a permit can only occur if there is already an existing permit to suspend or revoke. Alternatively, a permit never even exists if the permit application is denied. The defendants' permit was not suspended but had rather expired on June 30, 2001. The defendants' renewal application, filed on March 30, 2001, was to obtain a new permit but was denied on June 26, 2001. The commissioner did not revoke the defendants' permit when it's renewal application was denied. Instead the permit expired by its terms. Although CWO had a property right in the permit which expired, it had no such property right after the permit expired. "[A] license, being within the scope of the protection afforded by the due process clause, is indeed a property right once it has been issued, and it remains such until its expiration date so long as the laws pertaining to its use are obeyed." Hart Twin VolvoCorp. v. Commissioner of Motor Vehicles, 165 Conn. 42, 46-47 n. 1,327 A.2d 588 (1973). "With these principles in mind, we conclude that, when a due process claim has been raised by an applicant for a statutory benefit, the applicant has a protected property interest in the benefit when, under the governing statute, the decision-making body would have no discretion to deny the application if the applicant could establish at a hearing that it met the statutory criteria." Giaimo v. New Haven,257 Conn. 481, 509, 778 A.2d 33 (2001). Therefore, CWO has no constitutional property right because its property right expired when the permit expired.
The defendants argue that they were denied their due process rights afforded by General Statutes § 4-182 (c), which states in relevant part that "[n]o revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license." The defendants mistakenly argue that the license was revoked, suspended, annulled or withdrawn when in fact it expired by its terms. As explained above, the implications of the former are entirely different and would favor the defendants by requiring that the plaintiff explain his reasons for the "withdrawal" and allow the defendants to correct these problems. Since § 4-182 (c) does not address the expiration of a permit, it does not apply to this situation.
The defendants next contend that the defendants' renewal application CT Page 17248 was made timely and that under § 4-182 (b), a permit for an activity of a continuing nature does not expire until the renewal application has been finally decided. The application for renewal was not made timely and therefore does not fall under the § 4-182 (b) safe harbor provision. General Statutes § 4-182 (b) states that "[w]hen a licensee has madetimely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license shall not expire until the application has been finally determined by the agency, and, in case that application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court." (Emphasis added.) The defendants may not utilize this "safe harbor" provision because the defendants' renewal application was not a timely application. Section 22a-3a-5 (c)(1) of the Regulations of Connecticut State Agencies explicitly states that "[a]n application for renewal of a license shall be filed no later than 120 days before the expiration of the existing license, unless . . . a later filing is allowed by an applicable statute or regulation."
The defendants admit they fell 8 days short of this 120 days, having filed 92 days before the expiration of the existing license. In fact, the defendants consciously considered their late filing when they calculated and paid a required late fee for their untimely filing of the renewal application. The defendants now claim that this regulation is merely "procedural and not substantive." The defendants further argue that this rule is meant to be interpreted liberally so as to further an "expeditious determination." The defendants conclude that "[i]t is thus a procedural tool for the benefit of DEP staff, and has nothing to do with the substantive requirements for renewing a license." (Defendants' Memorandum, p. 8.) The defendants do not provide any support, other than their own opinion, that the regulation should be interpreted to such a "liberal" extent as to ignore the rule which specifically states a 120 day deadline. It is submitted that this is a contention without support.
The defendants next argue that General Statutes § 22a-6j(a), which authorizes the commissioner to accept an "untimely application," allows such applications to benefit from § 4-182 (b)'s safe harbor clause that would allow the defendants to continue with use of the license until the application for renewal is finally determined. Section 4-182 (b) specifically addresses timely applications and no language whatsoever suggesting that it is meant to apply to untimely applications. It would be nonsensical to have a "timely" application at all if there is no difference between timely and untimely applications. There is no reason to believe that the commissioner's acceptance of an untimely application entitles the tardy applicant to the benefits of a timely made application. The defendants contend that "when he accepted and processed CT Page 17249 the renewal application, the commissioner waived the right to claim that it was untimely within the meaning of UAPA § 4-182 (b)" and therefore implicitly authorized its continuation. (Defendants' Memorandum, p. 10.) The defendants illogically concludes that "given the constitutional requirement protecting CWO from deprivation of its property right in the existing license without due process, the acceptance of the application and the late fee combine to place CWO within the `safe harbor' of the UAPA." (Defendants' Memorandum, p. 10.) Following this logic, every renewal application received before the expiration date, even with the late filing fee attached would be considered timely. The defendants provide no support for this contention.
The plaintiff's argument that the commissioner granted CWO the authority to operate under its expired permit is mistaken in that it ignores the statutory limitations on the commissioner's powers to allow such operation. The commissioner's power to renew a permit to transport waste is limited by General Statutes § 22a-6j which provides that the commissioner must make findings that "the renewal application is likely to be granted and that the public interest would best be served" by allowing an late applicant to continue to transporting waste after the permit which the applicant is seeking to renew has expired. The court's "fundamental objective is to ascertain and give effect to the apparent intent of the legislature." State v. Burns, 236 Conn. 18, 22, 670 A.2d 851
(1996), quoting State v. Spears, 234 Conn. 78, 86-87, 662 A.2d 80
(1995). "`It is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary. Winslow v. Lewis-Shepard, Inc., 216 Conn. 533,538, 582 A.2d 1184 [1174] (1990). See also, Anderson v. Ludgin,175 Conn. 545, 554, 400 A.2d 712 (1978). . . .'" (Citation omitted.) Rosev. Freedom of Information Commission, 221 Conn. 217, 225, 602 A.2d 1019
(1992). The commissioner's powers are expressly conditioned on the making of the findings noted above The statute is clear on it's face. The commissioner made no such findings and therefore the commissioner could not have legally authorized the plaintiff to continue to transport waste after CWO's license expired.
Further, the defendant's argument that there is a deprivation of a constitutional property right regardless of whether "taking away an issued license is called a suspension or revocation or a denial" is unfounded. Even assuming the defendants are entitled to the hearing on the commissioner's rejection of the renewal application, there is still no support for the proposition that CWO has a right to to transport waste without a license in the interim. There is no support that the pending declaratory ruling should stay the commissioner's denial of the license renewal application. CT Page 17250
Vanessa L. Bryant, J.