[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Manuel Moutinho and York Street Cafe, Inc., appeal the decision of the defendant, Bridgeport Zoning Board of Appeals, upholding the zoning enforcement officer's issuance of a cease and desist order to Mathew Moutinho of York Street Cafe.[1] The parties submitted briefs, the return of record and exhibits, including the City of Bridgeport Zoning Regulations. Oral argument was heard by this court on October 2, 2002.
 BACKGROUND
On April 25, 1997, the zoning enforcement officer of the city of Bridgeport issued an Order to Comply to Mathew Moutinho, President, York Street Cafe, for violation of § 6-3-2 of the zoning regulations, ordering York Street Cafe to cease and desist the conduct of adult entertainment at 2068 East Main Street, Bridgeport, Connecticut, which is in the OR-S zone. (Return of Record [ROR], Item 1(e).) The zoning board of appeals held a public hearing on July 8, 1997, to address Moutinho's appeal from the zoning enforcement officer's order. (ROR, Item 1(a).) At the hearing, counsel for Moutinho filed with the zoning board of appeals a presentation packet containing Exhibits A-J, which he presented to the board in support of his argument that the adult entertainment discovered at the property by the zoning enforcement officer is a legal nonconforming use that had not been abandoned by Moutinho. (ROR, Item 1(g).) The board denied the appeal and issued its decision on July 8, 1997. (ROR, Item 1(i).) The board stated two reasons for its denial: "the intended use of the subject site was that of a restaurant and not an adult entertainment facility . . . The adult entertainment use was improperly established after the August 12, 1996 effective date in violation of the present Zoning Regulations." (ROR, Item 1(i).) Moutinho now appeals the board's decision.
 JURISDICTION
CT Page 1721
General Statutes § 8-8 governs an appeal from the decision of a planning and zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276,283, 487 A.2d 559 (1985).
 Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). Aggrievement is a factual issue, "and credibility is for the trier of the facts . . ." (Internal quotation marks omitted.) QuarryKnoll II Corporation v. Planning and Zoning Commission, 256 Conn. 674,703, 780 A.2d 1 (2001). An owner of property that is the subject of an application is aggrieved for the purpose of bringing an appeal, and a plaintiff may prove aggrievement by testimony at the time of trial.Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308, 592 A.2d 953 (1991). A plaintiff may also prove aggrievement "by the production of the original documents or certified copies from the record." (Internal quotation marks omitted.) Quarry KnollII Corporation v. Planning Zoning Commission, supra, 703.
In the present appeal, Moutinho alleges that he is aggrieved because he owned the property at 2060-2068 East Main Street at the time of the commencement of the appeal; therefore, the board's decision would deny him a legal nonconforming use of the property. (8/1/97 Appeal, ¶ 6.) Plaintiffs' counsel submitted to the court an amended certificate of foreclosure demonstrating Moutinho's ownership of the property at the time of the commencement of the appeal. (7/8/02 Plaintiff's Exh. C.) In addition, plaintiffs' counsel submitted a warranty deed to the court reflecting the sale of the property to 2060 East Main Street, Inc. (6/13/02 Plaintiff's Exh. A); and a copy of the certificate of amendment to York Street Cafe's certificate of incorporation, representing to the court that, as of January 19, 2000, the name of the corporation was changed to Teddie's Inc. (6/13/02 Plaintiff's Exh. B.) On April 22, 2002, the court, Brennan, J., granted Moutinho and York Street Cafe's motion to substitute 2060 East Main Street and Teddie's Inc. as plaintiffs. Accordingly, as there was no objection to this substitution of plaintiffs at trial. (10/2/02 Trial Transcript.), the court finds the plaintiffs are aggrieved.
 Timeliness and Service of Process
CT Page 1722
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e), now subsection (f), further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The record contains an affidavit of publication attesting that notice of the commission's decision was published on July 13, 1997, in theConnecticut Post newspaper. (ROR, Item 1(i).) On July 28, 1997, this appeal was commenced by service of process on the Bridgeport city clerk, the clerk of the zoning board of appeals, and the chairman of the zoning board of appeals. Accordingly, the court finds that this appeal was commenced in a timely manner by service of process upon the proper parties.
 Citation
"[A] proper citation is essential to the validity of the appeal and the jurisdiction of the court." (Internal quotation marks omitted.) Gadboisv. Planning Commission, 257 Conn. 604, 607, 778 A.2d 896 (2001). On July 23, 1997, a commissioner of the Superior Court issued a proper citation, which was filed with the Superior Court of the judicial district of Fairfield at Bridgeport on August 1, 1997.
 SCOPE OF REVIEW
Pursuant to General Statutes § 8-6 (a) (1), the zoning board of appeals has the power and duty "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the [zoning enforcement officer] charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . ." Furthermore, "General Statutes § 8-7
provides in relevant part that [a]n appeal may be taken to the zoning board of appeals by any person aggrieved [by a decision of a zoning official] . . . Such board shall, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties . . ." (Emphasis in original; internal quotation marks omitted.)Grasso v. Zoning Board of Appeals, 69 Conn. App. 230, 239, 794 A.2d 1016
(2002). "It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts . . . The board is vested with liberal CT Page 1723 discretion in conducting hearings." (Citations omitted; internal quotation marks omitted.) RR Pool Patio, Inc. v. Zoning Board ofAppeals, 257 Conn. 456, 468, 778 A.2d 62 (2001). "[C]ase law further reinforces the de novo nature of the hearing conducted by the zoning board of appeals." Caserta v. Zoning Board of Appeals, 226 Conn. 80, 90,626 A.2d 744 (1993)
"An adverse decision by the board may be appealed to the Superior Court under General Statutes § 8-8 (b)." RR Pool Patio v. ZoningBoard of Appeals, supra, 257 Conn. 469. "In [zoning] appeals, [t]he Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal . . . Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the [board] was required to apply under the zoning regulations . . . It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Internal quotation marks omitted.) Cumberland Farms, Inc. v. Groton, 262 Conn. 45, 51 n. 8 (2002). "[T]he appealing aggrieved party [must] marshal the evidence in the record, and . . . establish that the decision was not reasonably supported by the record." (Emphasis in original; internal quotation marks omitted.) Quarry Knoll II Corp. v. Planning Zoning Commission,supra, 256 Conn. 716. "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Irwin v. Planning Zoning Commission, 244 Conn. 619,629, 711 A.2d 675 (1998).
 DISCUSSION
The board denied Moutinho's application for appeal and stated in its decision that the zoning enforcement officer's action was proper because the intended use of the property was for a restaurant and not an adult entertainment facility. (ROR, Item 1(i).) In addition, the board determined: "[t]he adult entertainment use was improperly established after the August 12, 1996 effective date in violation of the present Zoning Regulations." (ROR, Item 1(i).) Moutinho appeals from the board's decision on the ground that the board acted illegally, arbitrarily, and abused its discretion. (Appeal, ¶ 8.) Moutinho articulates six reasons in support of his position: "a.) its decision deprived the Plaintiffs of their property rights and of the value, reasonable use and enjoyment of the Premises without due process of law; b.) its decision deprives the Plaintiffs of the value, reasonable use and enjoyment of the Premises without just compensation; c.) its decision ignored, and is CT Page 1724 contrary to, the substantial weight of evidence in the record; d.) its decision failed to consider the factors and standards set forth in the Zoning Regulations of the City of Bridgeport; e.) its decision is contrary and at odds with well established law; and f) it otherwise acted illegally, arbitrarily and abused its discretion." (Appeal, ¶ 8a-f.) The court addresses solely the issues of legal nonconforming use and abandonment because Moutinho limited his brief to those issues.Connecticut National Bank v. Giacomi, 242 Conn. 17, 44-45, 699 A.2d 101
(1997) (court not required to review inadequately briefed issues).
In support of his appeal, Moutinho argues that he always intended to use the property for adult entertainment and that he supplied evidence to the board which supports his claim that he used the property for that purpose prior to enactment of the new zoning regulations on August 12, 1996. (Moutinho's pretrial brief, pp. 10-12.) Moutinho also contends that the board abused its discretion when it denied his application based on its determination that the intended use of the property was that of a food establishment. (Moutinho's pretrial brief, pp. 16-18.) In addition, Moutinho asserts that the property has been used as an adult entertainment facility since 1991, thereby establishing a legal nonconforming use which must be allowed to continue. (Moutinho's pretrial brief, pp. 18-20.) Furthermore, he contends that he did not abandon his use of the property for adult entertainment because his actions, prior to August 12, 1996, reestablished the premises as an adult entertainment facility. (Moutinho's pretrial brief, pp. 20-26.)
In response, the board argues that the documents submitted by Moutinho to zoning officials constitute admissions of his intent to abandon any use of the property for adult entertainment because they demonstrate his intent to operate a food establishment and bar. (Board's brief, pp. 5-7.) The board also asserts that the record fails to demonstrate the existence of a nonconforming use because Moutinho was not operating an adult entertainment facility at the property as of August 12, 1996. (Board's brief, pp. 7-11.)
The record fails to demonstrate that Moutinho established a legal nonconforming use of the premises prior to the effective date of the zoning regulations. "A nonconforming use is merely an existing use the continuance of which is authorized by the zoning regulations . . . Such a use is permitted because its existence predates the adoption of the zoning regulations . . . It is well established that [t]o be a nonconforming use the use must be actual. It is not enough that it be a contemplated use [or] that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use . . . The plaintiff bears the burden of proving the existence of CT Page 1725 a nonconforming use." (Citations omitted; internal quotation marks omitted.) Francini v. Zoning Board of Appeals, 228 Conn. 785, 789,639 A.2d 519 (1994). "[T]o be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose." Karls v. Alexandra Realty Corp. ,179 Conn. 390, 399, 426 A.2d 784 (1980).
"For a use to be considered nonconforming . . . that use must possess two characteristics. First, it must be lawful and second, it must be inexistence at the time that the zoning regulation making the use nonconforming was enacted . . . to be an existing use, premises must be so utilized as to be known in the neighborhood as employed for a given purpose." (Citations omitted; emphasis in original; internal quotation marks omitted.) Cummings v. Tripp, 204 Conn. 67, 91-92, 527 A.2d 230
(1987). The Bridgeport zoning regulations similarly provide: "Any structure or the use of any structure or land which was conforming or validly nonconforming and otherwise lawful at the enactment date of the Zoning Regulations and is nonconforming under the provisions of these Regulations, or which shall be made nonconforming by a subsequent amendment, may be continued in accordance with the provisions of this Section. Bridgeport Zoning Regs., c. 3, § 10-1.
Here, the board denied Moutinho's appeal because it found that Moutinho had not established a nonconforming use prior to August 12, 1996. (ROR, Item 1(i).) In addition, the board determined that the record showed that he intended to use the property for a restaurant and not for adult entertainment. (ROR, Item 1(i).) The court finds that the board's denial of Moutinho's appeal was supported by the record and was reasonable based upon the evidence.
The record does not substantiate Moutinho's contention that he actually operated an adult entertainment facility on the property prior to August 12, 1996. "Adult entertainment facilities" are defined in the zoning regulations as: "Establishments including bookstores, bars, restaurants . . . where films are shown, or videotapes, magazines, books, or other printed matter are sold, or live performances take place, that are characterized by an emphasis upon the depiction or exposure of Specified Sexual Activities or Specified Anatomical Areas." Bridgeport Zoning Regs., c. 10, Table 10-7. "Adult entertainment" includes uses such as, "bars featuring `topless' or `exotic' dancers or strip-tease performances." Bridgeport Zoning Regs., c. 10, Table 10-7.
Prior to the change in zoning regulations, adult entertainment was a CT Page 1726 possible legal use for Moutinho's property because, at that time, it was part of an industrial heavy use zone. (ROR, Item 1(h), Exh. 1.) While adult entertainment was a permitted use for his property at that time, Moutinho was required by § 14-4 of the zoning regulations to apply for and obtain a special permit subject to certain conditions from the zoning commission. Bridgeport Zoning Regs., c. 7, Table 7-2-2. (ROR, Item 1(h), Exh. 2.) There is no evidence in the record that he sought or obtained a special permit to establish an adult entertainment facility as a legal use of his property. (ROR, Item 1(h).) Thus, while Moutinho had the opportunity, prior to August 12, 1996, to legally use his property as an adult entertainment facility by obtaining a special permit, the record does not demonstrate that he did so.
Furthermore, the documents submitted to the board by Moutinho do not demonstrate that the property was actually used for adult entertainment prior to August 12, 1996. The record contains a copy of an advertisement appearing in the February 20, 1997 issue of the Fairfield County Weekly
for the "Grand Opening" of the York Street Cafe at 2068 East Main Street on February 21, 1997. (Emphasis added.) (ROR, Item 1(h), Exh. 6.) This advertisement suggests that the property was not "so utilized as to beknown in the neighborhood" for adult entertainment prior to February 21, 1997. According to the record, the earliest dates adult entertainment existed on Moutinho's property were October 25, 1996, and December 5, 1996, when the zoning enforcement officer's investigations revealed the presence of exotic dancers. (ROR, Item 1(h), Exh. 7.)
There is substantial record evidence to support the board's decision. First, while Moutinho's counsel notes that the architectural plans for the property depict a stage on the premises and suggests that it was built expressly for exotic dancing, there is no particular description in the plans that this is the purpose of the stage. (ROR, Item 1(f).) In addition, documents filed by Moutinho with the zoning commission propose modifications for the premises including, "build[ing] a food bar, DJ Booth, stage incidental to a food establishment." (Emphasis added.) (ROR, Item 1(h), Exh. 1.)[2] Second, in the application for zoning compliance filed with the zoning commission on March 27, 1996, by Moutinho's son and contractor, Scott Moutinho, the intended use of the property is clearly described as a "food establishment." (ROR, Item 1(h), Exh. 1.) On the application, Moutinho also described the present use as "vacant" and did not claim any preexisting right. (ROR, Item 1(h), Exh. 1.) Third, the building department issued a certificate of occupancy for a "food establishment." (ROR, Item 1(h), Exh. 3.) Fourth, in a petition to the board for a liquor license dated May 14, 1996, Moutinho proposed to use the property for "a full service liquor serving establishment" and claimed hardship stating that the "facility [was] designed and arranged CT Page 1727 to be a bar/restaurant." (ROR, Item 1(g), Exh. C.) Fifth, in the incident report supplied to the board by Moutinho regarding damage to the property on February 20, 1995, he referred to the property as a "restaurant/bar" and the type of property taken/damaged as "kitchen equipment, bar equipment, several T.V. and screens." (ROR, Item 1(g), Exh. A.) These items in the record reflect an expressed intent by Moutinho to use the property for a restaurant and bar and not for an adult entertainment facility.
According to the record, the only statement Moutinho provided to zoning officials of his intent to use the facilities for adult entertainment consists of a letter, dated August 5, 1996, written a week before the enactment of the zoning regulations, from Antonio Pacelli of York Street Cafe, Inc. in response to the request of Agent Rick Robinson of the liquor control division of the department of consumer protection. (ROR, Item 1(g), Exh. F.) This letter stated that the dancing anticipated at York Street Cafe would include "strip tease acts performed by women or men . . . and possibly couples dancing to D.J. music and live bands." (ROR, Item 1(g), Exh. F.) Other than this letter, the only time Moutinho articulated an intent to use his property for adult entertainment was at the public hearing on July 8, 1997. At the hearing, Moutinho's counsel argued that Moutinho intended to provide adult entertainment on his property. (ROR, Item 1(a).) Hence, Moutinho's counsel submitted a "Sworn Statement of Proof of Loss" at the hearing, in which Moutinho described the premises as being occupied at the time of loss with a "bar/adult entertainment." (ROR, Item 1(g), Exh. A.) At that time, Moutinho's counsel also supplied an affidavit by Moutinho representing to the board that "[f]rom 1991 to February 1995 the property was used for adult entertainment." (ROR, Item 1(g), Exh. A.) In this affidavit, Moutinho stated, "I intended to have the property utilized for adult entertainment as had been conducted on the property." (ROR, Item 1(g), Exh. A.) Although Moutinho's counsel submitted this affidavit to the board in support of his argument that the premises were used for adult entertainment prior to August 12, 1996, this court has previously stated, "[a]ffidavits containing self-serving and unsubstantiated allegations need not be viewed as persuasive by the court." Brennan v.Culligan Water Services, Superior Court, judicial district of Waterbury, Docket No. CV 00 0160170 (June 10, 2002, Wolven, J.).
"It is well established that [t]o be a nonconforming use the use must be actual. It is not enough that it be a contemplated use [or] that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use . . . The plaintiff bears the burden of proving the existence of a nonconforming use." (Citations omitted; internal quotation marks omitted.) Francini v. ZoningCT Page 1728Board of Appeals, supra, 228 Conn. 789. "[T]o be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose." Karls v.Alexandra Realty Corp. , supra, 179 Conn. 399.
While Moutinho renovated the property after a loss he sustained on February 20, 1995 (ROR. Item 1(g), Exh. A.); the record does not support his contention that he renovated the property and "irrevocably committed" it to an adult entertainment use. (ROR, Items 1(f); 1(g); 1(h).) The documents submitted by Moutinho to the board and to zoning officials refer to improvements to the property related to a food establishment and do not "unequivocally indicate" that the property was going to be used for adult entertainment. (ROR, Items 1(g); 1(h).) At best, the record may reflect a potential intent by Moutinho as of August 5, 1996, to use the property at some future time for adult entertainment. (ROR, Item 1(g), Exh. A.) The first actual uses of the property for adult entertainment documented in the record occurred in late October 1996, well after the enactment of the new zoning regulations which prohibited adult entertainment. (ROR, Item 1(h), Exh. 7.)
The court finds Squillante v. Zoning Board of Appeals persuasive. In that case, as in the present appeal, the plaintiffs contended that they had established a legal nonconforming use of the premises at issue because they had contemplated providing adult entertainment prior to the enactment of zoning regulations, which subsequently prohibited adult entertainment in the zone where the premises were located. Squillante v.Zoning Board of Appeals, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 96 0566513 (September 26, 1997, Aronson, J.T.R.). The Superior Court dismissed the plaintiffs' appeal because "[o]nce they made their intentions known . . . the record shows no actions by the plaintiffs to actually provide the contemplated adult entertainment prior to the enactment of the amendments to the municipal code . . ." Id. Similarly, based upon the evidence in the record, the court finds that the board correctly determined that Moutinho intended to use the premises for a restaurant. Therefore, the court declines to address Moutinho's argument regarding abandonment because the record does not demonstrate that he established a legal nonconforming use of the property prior to the effective date of the new zoning regulations.
 CONCLUSION
The board's determination that Moutinho intended to use the premise for CT Page 1729 a restaurant was not unreasonable, arbitrary or illegal, and was fully supported by the record. Accordingly, the plaintiff's appeal is dismissed.
By The Court,
Wolven, Judge